Gregory STONE, et al, Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION, et al, Defendants.

Civ. A. No. 87-1346 (CRR).

United States District Court, District of Columbia.

Jan. 4, 1990.

James H. Lesar, Washington, D.C. and Lawrence Teeter, Los Angeles, Cal., for plaintiffs.

Nathan Dodell and John D. Bates, Asst. U.S. Attys., Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

This is a Freedom of Information Act ("FOIA") suit seeking the release of names of Federal Bureau of Investigation ("FBI") and local law enforcement personnel that the defendants redacted when they disclosed FBI records to the plaintiffs on Senator Robert F. Kennedy's assassination. Relying upon the FOIA's personal privacy exemption, 5 U.S.C. § 552(b)(7)(C) ("Exemp-

tion 7(C)"), the defendants argue that they properly deleted the names while the plaintiffs argue that the public interest in the names of the FBI agents and local law enforcement officers involved in this investigation outweighs the individuals' privacy interests. The parties have filed cross-motions for summary judgment, oppositions, and supporting documents. The Court will uphold the defendants' Exemption 7(C) claim because they have met their burden of proving that disclosure of the names could reasonably be expected to constitute an invasion of personal privacy that is not outweighed by the public's interest in the names.

### I. Factual Background

The plaintiffs are scholars who have spent a considerable amount of time studying the 1968 assassination of Senator Kennedy and the ensuing investigation ("RFK investigation") by the FBI and the Los Angeles Police Department ("LAPD"). In pursuit of their research into the RFK investigation, the plaintiffs filed FOIA requests with FBI headquarters and with the FBI's Los Angeles Field ·Office. In response, the defendants released over 10,000 pages of FBI documents from their RFK investigation file. In many instances the defendants deleted the names of FBI agents or LAPD officers mentioned in the released documents, relying on Exemption 7(C) of the FOIA.[1] The defendants seemed to release a name only on those rare occasions when: (1) that agent or. officer had been in a "supervisory," as opposed to a "street," position in the RFK investigation because supervisory agents had already received a certain amount of publicity or (2) that agent or officer's involvement in the RFK investigation was already a matter of public record and the document named him

or her in precisely the same context as had previously been made public.

Dissatisfied with the defendants' deletion of the names, the plaintiffs pursued their administrative remedies. The defendants responded by disclosing the names of LAPD officers that had been previously released by the LAPD. The plaintiffs then filed this lawsuit.

### II. Analysis

■ It is well-established that the FOIA places the burden upon the agency to prove that requested information should not be released and that the Court must review *de novo* the agency's decision not to disclose. 5 U.S.C. § 552(a)(4)(B). Moreover, courts must construe FOIA exemptions narrowly because "disclosure, not secrecy, is the dominant objective of the [FOIA]." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Exemption 7(C), as amended in 1986, requires that information be disclosed except for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C). There is no dispute that the information requested in this case satisfies the threshold requirement of having been compiled for law enforcement purposes.

Thus, in deciding whether Exemption 7(C) authorizes the defendants' refusal to release the names requested by the plaintiffs, this Court must balance the privacy interests of the "non-supervisory" FBI agents and LAPD law enforcement officers[2] named in the FBI's RFK investiga-

---

1. The defendants also deleted the names of FBI clerical personnel named in the documents. Although it is not entirely clear, the plaintiffs apparently are seeking only the release of the names of FBI agents and local law enforcement officers and not the names of FBI clerical employees. In any event, even if a secondary goal of the plaintiffs were the release of the names of FBI clerical employees, the Court would hold that they were properly deleted under Exemption 7(C). Therefore, this Opinion henceforth will address only the propriety of the defen-

dants' refusal to disclose the names of FBI agents and local law enforcement officials.

2. The issues, as well as the Court's holding announced herein, are essentially the same with regard to the names of FBI agents and LAPD officers. Moreover, FBI documents are at issue and the FBI is one of the defendants while the LAPD's involvement in this suit is indirect at best. Therefore, unless otherwise indicated, any reference by the Court to "FBI agents" or

tion file against the public's interest in learning the identities of the individuals who were directly involved in the minute details of this investigation. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* —— U.S. ——, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 486 (D.C.Cir.1980).

### A. The Agents' Privacy Interests

In the plaintiffs' view, the most significant aspect of the privacy analysis in this case seems to be that the FBI agents are not private citizens and that therefore the agents' privacy interests are *de minimis.* However, as the United States Court of Appeals for this Circuit has stated:

> [T]he [FBI] agent by virtue of his official status does not forego altogether any privacy claim in matters related to official business. As several courts have recognized, these agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.

*Lesar,* 636 F.2d at 487; *see also Bast v. United States Dep't of Justice,* 665 F.2d 1251, 1255 (D.C.Cir.1981) ("[G]overnment officials do not surrender all rights to personal privacy when they accept a public appointment. While an individual's official position may enter the 7(C) balance, it does not determine, of its own accord, that the privacy interest is outweighed." (citations omitted)); *Nix v. United States,* 572 F.2d 998, 1006 (4th Cir.1978) ("One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties.").

Thus, the agents' status as public officials does not rob them of their privacy rights, especially in light of the lengthy period of time that has elapsed. Senator Kennedy was assassinated over twenty years ago, and the parties agree that many of the FBI agents who participated in the RFK investigation have long since retired. Whether they have retired, moved on to

another profession, or continue to serve their state or Nation as law enforcement officials, these agents have earned the right to be "left alone" unless an important public interest outweighs that right. The privacy concerns of these FBI agents may not be quite as important as those of private citizens, which are at the "apex" of the privacy rights protected by Exemption 7(C). *See Reporters Comm.,* 109 S.Ct. at 1485. But that alone should not lead this Court, in effect, to write a "public official" exception into the very FOIA exemption that Congress has carefully drafted and amended to strike a proper balance between disclosing information and protecting individual privacy interests.

The defendants' arguments on the privacy side of the scale fit into one of three categories. First, the defendants contend that any publicity, whether positive or negative, about the identity of an agent involved in the RFK investigation "can seriously hinder his/her future effectiveness and ability to conduct other investigations." Defendants' Statement of Material Facts Not In Issue ¶ 12. The defendants also state that lower-level agents who were merely carrying out their assigned duties during the RFK investigation should not be subjected to "unnecessary, unofficial questioning as to the conduct of an investigation." *Id.* The defendants' third argument is that, because individuals who have been investigated by FBI agents carry grudges for years and "will sometimes seek any excuse to harass" them, the release of an FBI agent's identity with respect to a particular investigation "could ignite an animosity toward the [agent] which might have serious consequences." *Id.* In the Court's view, these privacy interests are legitimate and worthy of the protection provided by Exemption 7(C).

■ The plaintiffs complain that the defendants have not presented evidence of any agent who specifically objects to the release of his or her name. However, neither the FOIA itself nor the FOIA case law requires such a showing by an agency rely-

"agents" should be deemed to include LAPD officers.

ing on Exemption 7(C). As the Fifth Circuit recently stated:

> "It is difficult if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort." ... We thus do not require that the government detail the precise harm which disclosure would inflict upon the privacy interests of each individual
>
> .    .    .    .    .

*Halloran v. Veterans Admin.*, 874 F.2d 315, 320 (5th Cir.1989) (quoting *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 488 (D.C.Cir.1980)). Thus, the defendants cannot be faulted for not meeting a burden that the FOIA does not require them to meet.

The Court's conclusion that the defendants' submissions are sufficient derives further support from a specific amendment to Exemption 7(C), which has eased the burden of an agency claiming that exemption. In 1986 Congress amended Exemption 7(C) by substituting "could reasonably be expected to constitute" for the "would constitute" standard that remains in the exemption for personnel and medical files. *Compare* 5 U.S.C. § 552(b)(6) (exemption applies if disclosure "would constitute a clearly unwarranted invasion of personal privacy"). This amendment "represents a considered congressional effort 'to ease considerably a Federal law enforcement agency's burden in invoking [Exemption 7].'" *Reporters Comm.*, 109 S.Ct. at 1473 n. 9 (quoting 132 Cong.Rec. S16,504 (Oct. 15, 1986) (statement of Sen. Hatch); *see also Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 (D.C.Cir.1987) (unlike other FOIA exemptions, "Exemption 7(C)'s balance is not similarly 'tilted emphatically in favor of disclosure'" (quoting *Bast v. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir. 1981))).

In attempting to diminish the agents' privacy interests, the plaintiffs make several arguments that fall wide of the mark. There is little, if any, relevance to the plaintiffs' contention that FBI agents have a minimal expectation of privacy because they identify themselves repeatedly throughout the course of an investigation. It may be true that FBI agents, unless they are working undercover, are required to identify themselves to the people they interview and that they are often required to testify in court. However, an agent who identified himself or herself in connection with an investigation conducted over twenty years ago would not be unreasonable in having a *present* expectation that his or her privacy will not be invaded by linking the agent's name to that investigation. After all, renewed publicity could reasonably be expected to rekindle old animosities, resulting in unwarranted invasions of the agent's privacy.

Similarly, the plaintiffs miss the mark by arguing that agents diminish their expectation of privacy by "playing up" their FBI connections when they move to another job. If that does in fact occur, it is the result of each individual agent's personal choice to reveal his or her FBI connection to a given person or organization. That situation simply does not compare with the FBI's disclosing en masse the names of the countless agents involved in the RFK investigation in response to a FOIA request made by individuals to whom the agents have no connection. Because the essence of privacy is being able to choose whether to reveal information about oneself, the plaintiffs' scenario of retired agents playing up their own FBI connections does not infringe privacy concerns, whereas the release of those same agents' names pursuant to a FOIA request does.

Finally, the plaintiffs' argument that the FBI has a policy of generally encouraging publicity about its agents is also irrelevant. What could reasonably be expected to constitute an unwarranted invasion of an agent's privacy is not that he or she is revealed as an FBI agent but that he or she is named as an FBI agent *who participated in the RFK investigation. See Halloran v. Veterans Admin.*, 874 F.2d 315, 321 (5th Cir.1989) ("it has long been the rule that our concern is not with the identifying information *per se*, but with the connection between such information and

some other detail—a statement, an event, or otherwise—which the individual would not wish to be publicly disclosed"). Merely because the FBI may choose to publicize a certain agent or a certain investigation to a certain extent does not mean that it must publicize *every* agent or *every* investigation to the *exact same* extent. Whatever its public relations policy may be, the FBI has not thereby waived the right to choose, within the confines of FOIA, exactly what type of publicity it will encourage, which agents' names will be released, and how detailed any such disclosure will be.

The plaintiffs want the FBI to have the exact same disclosure policy that it followed with regard to the investigations of the President Kennedy and Dr. Martin Luther King, Jr. assassinations.[3] But by adopting that reasoning, this Court would send agencies the wrong signal and foster a policy at odds with the FOIA's purpose of encouraging disclosure. Whereas the FOIA specifies when agencies *must* disclose certain information, the FOIA does not prevent agencies from *voluntarily* disclosing information that would otherwise be covered by one of the statutory exemptions. *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 258 (D.C.Cir.1977). The plaintiffs' scenario would encourage agencies involved in so-called historical cases to "play their cards close to the vest," because any disclosure beyond what is specifically required by the FOIA's exemptions could come back to haunt them and limit their options in future cases. Although it may seem paradoxical at first glance, by refusing to rely on the FBI's practice in past cases to order disclosure in this particular FOIA case, the Court actually furthers the statute's policy favoring disclosure as applied to FOIA cases in general.

### B. The Public's Interest in the Agents' Names

The other side of the equation in any application of Exemption 7(C) is the public

interest in disclosure. It is important to note that the scope of the information sought in this case is very narrow. This is *not* a case in which the FBI refuses to disclose any information whatsoever about the assassination of Senator Kennedy and keeps the public completely in the dark. To the contrary, the defendants have revealed the names of those agents who were involved in the RFK investigation in a supervisory capacity and have released over 10,000 pages of documents.

The information sought in this case consists of nothing more than the names of the many lower-level agents who participated in the RFK investigation. The plaintiffs argue that, for two reasons, there is a great public interest in these names. First, they contend that the names are necessary for accurate historical study of the RFK investigation because the documents that have been released cannot be evaluated properly or correlated to one another with the agents' names redacted. The plaintiffs also argue that the release of the names would further the public interest because scholars studying the RFK investigation would be able to interview the agents and learn information from them that has not been included in the voluminous official reports.

However, the plaintiffs' overestimate the weight of the public interest in this case. Although the public interest in the assassination of Senator Kennedy and the ensuing investigation is great indeed, the public interest in the names of the lower-level agents who participated in the investigation is much less significant. Those FBI agents who were involved in the RFK investigation in a supervisory capacity are, by definition, the agents whose knowledge of the deployment and coordination of the "street-level" agents was comprehensive. The supervisory agents (and the RFK investigation itself) are the repositories of the FBI's institutional knowledge regarding the RFK investigation. The defen-

---

**3.** Although the parties have argued over whether the FBI's disclosure policy regarding the RFK investigation documents is more restrictive than its policies for the President Kennedy and Dr.

King investigations, the Court need not resolve that dispute and by its discussion does not express an opinion one way or the other on that issue.

dants have already released the names of these supervisory agents and much of the RFK investigation file. It is this type of disclosure which promotes the FOIA's policies of "creat[ing] a broad right of access to 'official information,'" *Reporters Comm.*, 109 S.Ct. at 1481 (quoting *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973)), and enabling citizens to be informed about "what their government is up to." *Id.*

By contrast, each lower-level agent's knowledge of the RFK investigation is fragmented, consisting of the bits and pieces of information that he or she discovered or heard about from others. Moreover, the substance of these agents' knowledge is contained in their reports and memoranda, which are part of the FBI's RFK investigation file and have been disclosed with only the identity of the author concealed. The Court agrees with the defendants that releasing the names of these lower-level agents would not inform citizens about what their government was up to nor would it reveal how the FBI conducted the investigation. *See Miller v. Bell*, 661 F.2d 623, 630–31 (7th Cir.1981) (substance of information in FBI files has been exposed in its entirety and only agents' names have been deleted; documents thus reveal entire course of investigation and public interest in disclosure of names is "minimal in the extreme"), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982).

The Court is not convinced by the plaintiffs' arguments that there is a great public interest in these names. As to the plaintiffs' first contention, it may be true that not knowing who wrote the reports and memoranda makes their task of interpreting and correlating these many documents "difficult or uncertain." Memorandum In Support of Plaintiffs' Motion for Summary Judgment at 33. However, "the FOIA was not designed to benefit private litigants." *Johnson v. United States Dep't of Justice,*

739 F.2d 1514, 1519 (10th Cir.1984) (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29 (1975)). To the extent that there is any *public* interest in making the plaintiffs' studies of the RFK investigation less onerous, it does not outweigh the agents' legitimate privacy concerns. Moreover, there have been no allegations that any of the agents engaged in improper conduct, which would directly implicate the "strong public interest in monitoring the conduct and actual performance of public officials." *Baez v. United States Dep't of Justice,* 647 F.2d 1328, 1339 (D.C.Cir.1980) (public interest might be served by disclosing agent's name when called to testify concerning his or her activities or when agent's performance is called into question).

The plaintiffs' second argument based on their purported need to have access to lower-level agents to question them about the RFK investigation is a hypothetical pyramid built of attenuated and speculative premises, adding little weight to the public interest side of the scale. The RFK investigation has been the subject of extensive publicity and close scrutiny by law enforcement organizations, the media, and scholars. Under such circumstances and over twenty years later, it is highly speculative that the lower-level agents' knowledge has not already become part of the public record. Assuming *arguendo* that one of these agents did not include some piece of information in his or her report, it is further speculation that the agent would remember this information and would supply it to a private citizen asking questions about the RFK investigation. Finally, even assuming this improbable combination of events, it is speculative that this piece of information would be anything other than an insignificant detail in terms of the public interest in resolving some of the questions that continue to surround the assassination of Senator Kennedy.[4] Thus, it is highly

---

4. The Court recognizes that almost any "new" information would be considered "significant" by someone who has spent many years studying every aspect of the RFK investigation in great detail. However, while the Court is mindful of the important role that investigative journalists, professors, and other scholars play in keeping the public informed, this is a case in which their interests and the public interest are not necessarily identical. It is conceivable that the same

unlikely that the release of the agents' names would lead to any new information about the RFK investigation and that such hypothetical new information which might conceivably surface would make more than an incremental contribution to the public interest.

### C. Balancing the Interests

█ On the one hand, the Court is faced with the privacy interests of the lower-level agents involved in the RFK investigation. While their status as public officials may somewhat reduce the agents' privacy interests from those of a private citizen, their privacy concerns—especially after more than twenty years have elapsed—nevertheless are important and worthy of the protection afforded by Exemption 7(C). On the other hand, the public interest implicated by this narrow issue of whether to disclose the agents' names does not live up to the plaintiffs' expectations and is minimal at best. Therefore, the Court holds that the public interest does not outweigh the agents' privacy interests and that the defendants correctly withheld the agents' names under Exemption 7(C). This conclusion is further supported by numerous cases from this and other circuits that have permitted agencies to invoke Exemption 7(C) and withhold law enforcement officials' names appearing in documents compiled for investigatory purposes.[5]

### III. Conclusion

The Court will grant the defendants' motion for summary judgment. They properly relied upon Exemption 7(C) to withhold

bit of new information considered significant by zealous students of the RFK investigation would be nothing more than minutiae of little or no value in terms of the public interest. Under the FOIA, the Court must look first and foremost to the public interest, if any, served by releasing the information requested, not to the highly-specialized interests of those individuals who understandably have a great personal stake in gaining access to that information.

5. The United States Court of Appeals for this Circuit several times has upheld an agency's claim that law enforcement officials' names are protected from disclosure under Exemption 7(C). *Senate of Puerto Rico v. United States*

the names of FBI agents and LAPD officers because releasing the names could reasonably be expected to constitute an unwarranted invasion of their privacy.

*Dep't of Justice*, 823 F.2d 574, 587–88 (D.C.Cir. 1987); *Baez v. United States Dep't of Justice*, 647 F.2d 1328, 1339 (D.C.Cir.1980); *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 486–88 (D.C.Cir.1980). Case law from other circuits is in accord with these cases and the result reached by the Court herein. *See Johnson v. United States Dep't of Justice*, 739 F.2d 1514, 1518–19 (10th Cir.1984); *New England Apple Council v. Donovan*, 725 F.2d 139, 142–44 (1st Cir.1984); *Stein v. Department of Justice*, 662 F.2d 1245, 1259–1260 (7th Cir.1981); *Miller v. Bell*, 661 F.2d 623, 628–631 (7th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Nix v. United States*, 572 F.2d 998, 1005–06 (4th Cir.1978).