George E. COWSEN–EL, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al., Defendants.

Civ. A. No. 91–0401 (RCL).

United States District Court,
District of Columbia.

Feb. 24, 1992.

George E. Cowsen–El, pro se.

MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiff George Cowsen–El, currently incarcerated in the Federal Penitentiary in Marion, Illinois, submitted a request under the Freedom of Information and Privacy Acts, 5 U.S.C. §§ 552, 552a (1988 & Supp. I 1990) (FOIA or Privacy Act, respectively), to the Federal Bureau of Prisons (BOP). Cowsen–El requested copies of records pertaining to medical treatment he received at the prison on February 26, 1990, and the BOP Program Statement relating to stand-up counts. His requests were denied, in part, and he commenced this action *pro se* to compel production of the remaining requested records.

This matter is now before the Court on defendants' Motion for Summary Judgment and plaintiff's response thereto. For the reasons discussed below, defendants' motion is denied in part and granted in part.

## I. BACKGROUND

On May 24, 1990, Cowsen–El submitted a FOIA request to the FOIA section of the BOP. He requested copies of records pertaining to medical treatment he received at the prison on February 26, 1990.[1] He also requested a copy of BOP Program Statement 5511.2 (the Program Statement), relating to stand-up counts. The Program Statement sets forth BOP guidelines regarding daily stand-up counts of the prisoners conducted by prison officials. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at 2. The Program Statement is contained in the BOP's Correctional Services Manual. *Id.*

On August 7, 1990, having received no response to his requests, Cowsen–El appealed. *See* Complaint, Exhibit 7. Cowsen–El submitted a second appeal dated October 2, 1990. *See id.,* Exhibit 10. On November 13, 1990, Cowsen–El was informed that his request for a copy of BOP Program Statement 5511.2 was denied. *See id.,* Exhibit I. On November 29, 1990, Cowsen–El was informed that his request for a copy of his medical records would be honored in part and denied in part. *See id.,* Exhibit J. Specifically, the BOP released thirteen pages of medical records and withheld the remaining twelve pages, containing what it terms "diagnostic, evaluation and subjective impressions" of the prison medical staff. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at 3. He again appealed the denial of his request to access to the BOP program statement by letter dated December 1, 1990. It is unclear from the record whether Cowsen–El received a response to this appeal.

The court, on October 18, 1991, ordered BOP to produce all withheld documents for *in camera, ex parte* review. The BOP filed the twelve pages of withheld medical records and these records have been reviewed by the court.

## II. DISCUSSION

The court has jurisdiction to review the BOP decision to withhold the Program Statement and the medical records described above. *See* 5 U.S.C. § 552a(g)(1)(D).

### A. *The BOP Program Statement*

■ The BOP withheld the requested BOP Program Statement 5511.2 in its entirety on the basis of FOIA § 552(b)(7)(E) (Exemption 7(E)). Exemption 7(E) permits an agency to withhold:

> records or information compiled for law enforcement purposes ... to the extent that production of such law enforcement records or information ... (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law....

Thus, to properly invoke Exemption 7(E) the government bears the burden of establishing that the requested record was compiled for "law enforcement purposes" and that disclosure of the record will result in the harm Exemption 7(E) seeks to avoid. *See, e.g., Keys v. Department of Justice,* 830 F.2d 337, 340–41 (D.C.Cir.1987).

■ The BOP argues that the Program Statement may be withheld on the basis of Exemption 7 because the "statement provides a guideline to be followed by prison officials in conducting routine counts and inspections of prisoners" and because "[d]isclosure of this guideline could reasonably be expected to be used by individual inmates for the purpose of circumventing the procedure." Defendants' Motion for Summary Judgment at 2.

The BOP has failed to meet its burden of proof with respect to the Program Statement

---

1. Cowsen–El was treated for two lacerations on the top of his head. Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit A. Eight sutures were used by BOP doctors to treat one of the lacerations. *Id.* The second laceration was treated with steristrips. *Id.* Cowsen–El continued to have problems with these injuries despite the treatment he received from BOP physicians. *Id.,* Exhibit B (five weeks after receiving initial treatment for his injuries he requested a new examination because "one of the cuts ... ha[d] not healed right.... [and he was continuing to have] pain that's causing my head to hurt.").

and misconstrues the scope of Exemption (7)(E). BOP does not address, and therefore has not satisfied, its threshold burden under Exemption 7(E) of establishing that the document was compiled for "law enforcement purposes." *See, e.g., King v. Department of Justice,* 830 F.2d 210, 229–30 (D.C.Cir.1987) (explaining that an FBI record did not automatically satisfy this threshold requirement "simply by virtue of the function the FBI serves" and describing the two-part test employed in this circuit to determine whether this threshold requirement is satisfied); *see also Keys,* 830 F.2d at 340–41 (explaining the phrase "law enforcement purposes").

■ Nor can it be said that the BOP understands the harm that must be established under subsection (E). By its express terms, it authorizes the withholding of information consisting of, or reflecting, a law enforcement "technique" or a law enforcement "procedure" *if* it is "for law enforcement investigations and prosecutions," not internal agency policies wholly unrelated to investigations or prosecutions.[2] It is well-established that FOIA's statutory exemptions are to be narrowly construed. *E.g., Stone v. FBI,* 727 F.Supp. 662, 663 (D.D.C.1990). No reason has been advanced by the BOP to ignore this guiding principle in this case and the court declines to do so.

Accordingly, defendants' Motion for Summary Judgment will be denied with respect to this record. The BOP is free to seek summary judgment again with respect to this record in the future if it chooses to do so.

### B. *Cowson–El's Medical Records*

#### 1. The Contested Medical Records

On May 24, 1990, Cowsen–El submitted a Privacy Act request to the FOIA/PA section of the BOP. He requested copies of records pertaining to medical treatment he received at the prison on February 26, 1990. The BOP provided some of the requested records and withheld others. *See* Barley Aff. ¶¶ 14–

17 (attached as Exhibit to Defendants' Motion for Summary Judgment). Specifically, the BOP withheld twelve pages of these medical records it describes as containing "diagnostic and evaluative information." *Id.* ¶ 15.

#### 2. The BOP Justification for Failing to Disclose Cowsen–El's Medical Records

The BOP justifies its decision to withhold these medical records on the basis of the Privacy Act. The BOP explains that the Privacy Act requires government agencies to:

> establish procedures for the disclosure to an individual upon his request of his record or information pertaining to him, including special procedure, if deemed necessary, for disclosure to an individual of [his] medical records . . . .

5 U.S.C. § 552a(f)(3). The BOP promulgated a regulation governing disclosure of medical records to the person that is the subject of those records on the basis of this section of the Privacy Act. The BOP regulation provides:

> *Medical Records.* When an individual requests medical records pertaining to himself which are not otherwise exempt from individual access, the component may advise the individual that the records will be provided only to a physician designated by the individual, who requests the records and establishes his identity in writing. The designated physician shall determine which records should be provided to the individual and which records should not be disclosed to the individual because of possible harm to the individual or another person.

28 C.F.R. § 16.43(d) (1991). Cowsen–El was advised of the content of this regulation in his communications with the BOP. Barley Aff. ¶ 16. He has chosen not to designate a physician even though the BOP has indicated, as it must to comply with its own regulation, that it would release the withheld rec-

---

**2.** This is, of course, not to say that this information is subject to disclosure under FOIA. *See, e.g., Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981) (en banc); *Miller v. Department of Justice,* No. 87–0533, slip op. at 2–3, 1989 WL 10598 (D.D.C.

Jan. 31, 1989) (refusing to disclose other sections of BOP's Correctional Services Manual, including a BOP Program Statement concerning prison inmate counting procedures). However, the BOP has failed to articulate the proper basis for excusing disclosure at this time.

ords to such a physician. *Id.* The BOP therefore seeks summary judgment on the grounds that it has properly responded to Cowsen–El's request for access to his medical records by partially disclosing some of the records and by advising him to designate a reviewing physician regarding the remaining records containing "evaluative and diagnostic" information.

### 3. Discussion

The Privacy Act of 1974 sets in place significant restrictions on the government's use of information it compiles about its citizens. In so doing, it "serves to safeguard the public interest in informational privacy." *Ely v. Department of Justice,* 610 F.Supp. 942, 945 (N.D.Ill.1985). The Privacy Act seeks to accomplish such broad goals in several ways. For example, it restricts disclosure of records pertaining to individuals by government agencies, 5 U.S.C. § 552a(b); obligates the government to account for those disclosures that are permitted, *id.* § 552a(c); mandates that individuals shall be able to obtain access to agency records that pertain to them, *id.* § 552a(d); governs how agencies may collect and archive such information, *id.* § 552a(e); instructs government agencies to develop regulations facilitating compliance with the act's requirements, *id.* § 552a(f); and vests the courts with jurisdiction to hear suits by individuals to enforce its provisions, *id.* § 552a(g).

■ The issue that must be resolved here is whether the BOP's regulation, permitting disclosure of "evaluative" or "diagnostic" medical records only to the requester's physician, is a valid exercise of the regulatory authority conferred on the BOP by the Privacy Act.[3] For the reasons set forth below, this court concludes that it was a valid exer-

cise of the regulatory authority conferred on the BOP by the Privacy Act.

The principal justification advanced by the BOP for withholding Cowsen–El's medical records is the BOP's own regulation. *See* Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at 3. *See also* Barley Aff. ¶ 17 (explaining that direct disclosure of the requested records "would potentially create an atmosphere of confrontation between the inmate and medical staff," and "could inhibit the free exchange of medical evaluations and opinions between medical personnel of the treatment needs of the plaintiff").

The court, however, is obligated to look behind the regulation, to the statute under which it was promulgated, to assess the regulation's validity. *See* 5 U.S.C. § 552a(f) (authorizing agencies only to promulgate "rules [i]n order to carry out the provisions of th[e Privacy Act]"). The import of this limitation on agency regulatory authority is plain: the Privacy Act does not authorize government agencies to create new disclosure exemptions by virtue of their regulatory powers under the Privacy Act.[4]

To determine whether a regulation exceeds its underlying statutory authority a court must first determine "whether Congress has directly spoken to the precise question at issue." *Chemical Mfgs. Ass'n v. EPA,* 919 F.2d 158, 162 (D.C.Cir.1990) (quoting *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). To decide "whether Congress has so spoken, [the court] must look to 'the particular statutory language at issue, as well as the language and design of the statute as a whole,' *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 [108 S.Ct. 1811, 1817, 100 L.Ed.2d 313] (1988), and ... must employ the traditional tools of statutory construction, including,

---

3. There are no reported decisions addressing this issue. There are, however, two unpublished opinions by this court which have upheld the BOP regulation at issue. *See Smith v. Quinlan,* No. 91–1187, slip op. at 6, 1992 WL 25689 (D.D.C. Jan. 13, 1992); *Benavides v. Bureau of Prisons,* No. 90–1284 (D.D.C. Mar. 22, 1991).

4. The Privacy Act's legislative history makes clear Congress's intent that an agency's regulatory limitations on disclosure be the exception, not

the rule. For example, the Senate Report accompanying its proposed version of the Privacy Act explains that "any exemptions from [the Act's] provisions sought under the rule-making scheme of the bill must be kept to an absolute minimum and must not be made on the basis of parochial agency concerns." *See* S.Rep. No. 93–1183, 93d Cong., 2d Sess. 20, *reprinted in* 1974 U.S.C.C.A.N. 6916, 6935.

where appropriate, legislative history." *Chemical Mfgs. Ass'n,* 919 F.2d at 162 (citing *Ohio v. Department of Interior,* 880 F.2d 432, 441 (D.C.Cir.1989); *accord NLRB v. United Food & Commercial Workers Union Local 23,* 484 U.S. 112, 123–25, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446–48, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). The clear intent of Congress, if discernable from the foregoing inquiry, must be given effect. *Chevron U.S.A., Inc.;* 467 U.S. at 842–43, 104 S.Ct. at 2781. However, if the statute is silent or ambiguous on the issue in question, the court must defer to the agency's interpretation of the statute "if it is reasonable and consistent with the statute's purpose." *Chemical Mfgs. Ass'n,* 919 F.2d at 163.

The relevant statutory provision, 5 U.S.C. § 552a(f), does not directly address the propriety of the procedure adopted by the BOP for disclosure of medical records. It provides only limited guidance: agencies shall "establish procedures for the disclosure to an individual upon his request of his record or information pertaining to him, including *special procedure,* if deemed necessary, for the disclosure to an individual of his medical records." *Id.* § 552a(f)(3) (emphasis added). The surrounding subsections of § 552a(f) yield no clearer answer to what Congress contemplated by its choice of the phrase "special procedure." The definitional section of the Privacy Act also fails to shed light on the meaning and intended scope of this phrase.

This court's review of the Privacy Act's legislative history does, however, provide clear guidance. The Privacy Act of 1974, Pub.L. No. 93–579, was signed into law by President Ford on January 1, 1975. 11 Pub. Papers No. 1, 7 (President's statement signing Privacy Act into law). The House bill, upon which the bulk of the Privacy Act as ultimately enacted was based, included a section identical to § 552a(f)(3). *See* H.R. 16373, § 3 (introduced Aug. 12, 1974). The version of this bill ultimately passed by the House November 21, 1974, retained this language without modification and it was not subsequently amended. The House report

on H.R. 16373 briefly describes the relevant section as follows:

> Under (f)(3) each agency must establish procedures for disclosing pertinent records or information to individuals upon request....
>
> If, in the judgment of the agency, the transmission of medical information directly to a requesting individual could have an adverse effect upon such individual, the rules which the agency promulgates should provide means whereby an individual who would be adversely affected by receipt of such data may be apprised of it in a manner which would not cause such adverse effects. *An example of a rule serving such purpose would be transmission to a doctor named by the requesting individual.*

H.R.Rep. No. 93–1416, 93d Cong., 2d Sess. 16–17 (emphasis added). The legislative history of the Privacy Act contains only one other reference to this section of the act. *See* Cong.Rec. H10,693 (daily ed. Nov. 21, 1974) (statement of Rep. Kemp quoting second paragraph above from House Report to "clarify" the language of § 552a(f)(3) for other members during debate on the bill prior to its passage). These statements explaining the intended scope of agency authority to restrict disclosure of medical records demonstrate Congress's intent that disclosure through the requester's physician would be permissible.

Congress has spoken directly to the propriety of the BOP's chosen method of disclosure regarding medical records. The BOP has articulated its belief that direct disclosure will have an adverse effect on Cowsen–El. Accordingly, the court is obligated to give Congress's intent effect and uphold the BOP regulation. *Chevron U.S.A., Inc.,* 467 U.S. at 842–43, 104 S.Ct. at 2781.

## III. CONCLUSION

The court finds that the BOP has not met its burden of establishing that BOP Program Statement 5511.2 was properly withheld on the basis of Exemption 7. Accordingly, summary judgment is denied with respect to this document. The BOP has, however, satisfied its disclosure obligations with respect to the

withheld medical records, and accordingly, summary judgment will be granted with respect to those records.

### ORDER

For the reasons set forth in the court's memorandum opinion issued this date, it is hereby

ORDERED that defendants' Motion for Summary Judgment is DENIED with respect to plaintiff's request for Bureau of Prisons Program Statement 5511.2, and it is further

ORDERED that defendants' Motion for Summary Judgment is GRANTED with respect to plaintiff's request for a copy of records of medical treatment he received from Bureau of Prisons medical staff on February 26, 1990, and it is further

ORDERED that should defendants choose to seek summary judgment in the future with respect to the Bureau of Prisons Program Statement 5511.2, such motion must be filed with the court within ten days from the date of this order.

So ordered.