[No. S134072. Aug. 27, 2007.]

COMMISSION ON PEACE OFFICER STANDARDS AND TRAINING,
Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
LOS ANGELES TIMES COMMUNICATIONS LLC, Real Party in Interest.

## COUNSEL

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Vincent J. Scally, Jr., Elizabeth Hong and Michael E. Whitaker, Deputy Attorneys General, for Petitioner.

Law Offices of Jones & Mayer, Martin J. Mayer and Paul R. Coble for California State Sheriffs Association, California Police Chiefs Association and California Peace Officers Association as Amici Curiae on behalf of Petitioner.

Rains, Lucia & Wilkinson and Alison Berry Wilkinson for The Legal Defense Fund of the Peace Officers Research Association of California as Amicus Curiae on behalf of Petitioner.

Kasey Christopher Clark and Joshua C. Walters for Cause Statewide Law Enforcement Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers IV, Rochelle L. Wilcox; and Karlene W. Goller for Real Party in Interest.

Law Offices of Merrick J. Bobb and Merrick J. Bobb as Amici Curiae on behalf of Real Party in Interest.

Levy, Ram & Olson, Karl Olson; Thomas W. Newton; Jon Donnellan; Stephen J. Burns; Harold W. Fuson, Jr.; Levine Sullivan Koch & Schulz, James E. Grossberg; Charles Glasser; DLP Piper Rudnick Gray Cary, James Chadwick; Peter Scheer; Lucy A. Daglish and Gregg P. Leslie for California Newspapers Publishers Association, Hearst Corporation, Contra Costa Newspapers, Inc., McClatchy Company, The Copley Press, Freedom Communications, Inc., dba The Orange County Register, Associated Press, Bloomberg News, San Jose Mercury News, California First Amendment Coalition and the Reporters Committee for Freedom of the Press as Amici Curiae on behalf of Real Party in Interest.

Alan L. Schlosser, Mark Schlosberg; Peter Eliasberg; Law Offices of Amitai Schwartz, Amitai Schwartz, Lisa Sitkin; and Jordan C. Budd for ACLU of Northern California, ACLU Foundation of Southern California and ACLU Foundation of San Diego & Imperial Counties as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**GEORGE, C. J.**—This case presents the question whether the California Public Records Act (Gov. Code, § 6250 et seq.) requires the Commission on Peace Officer Standards and Training (Commission) to disclose the names, employing departments, and hiring and termination dates of California peace officers included in the Commission's database. The Court of Appeal reversed the judgment rendered by the superior court, which directed that the records be disclosed, because of the appellate court's conclusion that this information is obtained from peace officer personnel records which, under Penal Code sections 832.7 and 832.8,[1] may not be disclosed except under certain statutorily prescribed circumstances. We conclude that the records at issue are not rendered confidential by those two statutes and that the records do not come within any of the exemptions contained in the Public Records Act. Accordingly, we reverse the judgment of the Court of Appeal. Upon remand to the superior court, the Commission may seek to establish that information regarding particular officers or categories of officers should be excised from the disclosed records because the safety or efficacy of the officers would be jeopardized by disclosure.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## I.

The Commission is an agency created within the California Department of Justice that is charged with establishing standards of physical, mental, and moral fitness for peace officers. (§ 13510, subd. (a).) It also "develop[s] and implement[s] programs to increase the effectiveness of law enforcement" and provides education and training for peace officers. (§ 13503, subd. (e); see also § 13500.) The Commission is responsible for allocating state funds to local governments and districts for the expense of training full-time peace officers. (§ 13523.)

Every law enforcement department that participates in Commission programs and receives funding from the Commission is required to comply with the Commission's minimum selection and training standards for peace officers, and must permit the Commission to inspect its records in order to verify claims for reimbursement of funds or to confirm departmental compliance with Commission regulations. (§ 13523; Cal. Code Regs., tit. 11, § 9030.) "Whenever a peace officer of a participating department is newly appointed, promoted . . . or . . . terminates," the department is required to report that event to the Commission. (Cal. Code Regs., tit. 11, § 1003.) Departments may submit the required information either on a form or through the Internet, using a secure system that is available only to registered users. The form includes the officer's name, Social Security number, date of birth, gender, address, race or ethnicity, rank, and department. The information reported on the form includes the appointment date, the type of appointment (new, promotion, demotion, or status change), the appointment status (peace officer, reserve peace officer, dispatcher, or records supervisor), time base (full time, part time, or seasonal), pay status (paid or unpaid), termination date, and reason for termination (whether resigned, discharged, retired, deceased, or convicted of a serious crime).

The Commission maintains the reported information pertaining to each peace officer in an electronic database. It also maintains training records for persons who have taken Commission-certified courses. The Commission currently maintains information from 626 participating departments, and has been accumulating this information since the 1970's. The Commission employs these records to monitor compliance with its selection and training requirements, which apply to new appointments, promotions, and lateral transfers of employees. It also uses them to determine whether officers have met the training and experience requirements for its intermediate and advanced certificates. The Commission does not release these records to the public.

A reporter employed by the Los Angeles Times requested that the Commission release information in its database pertaining to all new appointments dating from 1991 through 2001. The information requested was the officer's name and birth date, employing department, appointment dates, termination dates, and reason for termination. The Commission denied the request, and Los Angeles Times Communications LLC (the Times) filed a petition for writ of mandate in the superior court, seeking release of the information under the California Public Records Act. (The Act; Gov. Code, § 6250 et seq.)

The Act exempts from disclosure any "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).) In denying the request, the Commission relied upon Penal Code sections 832.7 and 832.8, asserting that the requested information was obtained from peace officer personnel records and accordingly was privileged and exempt from disclosure. Section 832.7, subdivision (a) provides that peace officer personnel records, and "information obtained from these records, are confidential" and may be disclosed in civil or criminal proceedings only under specified discovery procedures. Section 832.8 defines " 'personnel records' " for purposes of section 832.7 as "any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

In support of its claim that the records at issue were obtained from peace officer personnel records, the Commission submitted a declaration from Paul Harman, the chief of its Information Services Bureau. Based upon his prior experience with the Los Angeles County Sheriff's Department and "on information and belief," Harman declared that the information provided to the Commission by law enforcement agencies came from peace officer personnel records.

At a hearing conducted by the trial court, the Times withdrew its request for officers' birth dates, explaining that it sought that information only for the purpose of distinguishing officers with the same name. The Times explained that it was interested in documenting trends in the movement of police

officers from one department to another, and that, for example, the Los Angeles Police Department was understaffed because it had a high rate of attrition due to many officers leaving employment at that department in order to work at other law enforcement agencies. The Times also was interested in whether and why officers might be hired by one agency after leaving a number of other agencies involuntarily.

The superior court entered a judgment ordering the Commission to release each officer's name, along with the appointing agency, date of new appointment, and termination date.[2] The Commission petitioned the Court of Appeal for extraordinary relief under the Act, claiming the requested information was privileged and thus exempt from disclosure. (See Gov. Code, § 6259, subd. (c).) The appellate court agreed, issuing a writ of mandate directing the superior court to vacate its judgment and enter a judgment denying the Times's petition in its entirety.

The Court of Appeal rejected the Times's threshold argument that the Commission had failed to prove the requested information was obtained from personnel records maintained by the employing agency, despite the Times's observation that the only evidence offered by the Commission on that subject was the declaration of its records manager, Harman, whose testimony was based in part upon information and belief. The Court of Appeal, noting that the Times did not suggest any other logical explanation for the origin of the information, concluded that "as a matter of common sense," the information sought by the Times—names, employment and termination dates, and employment status—necessarily was obtained from personnel records.

The Court of Appeal also rejected the Times's argument that, because the names of peace officers, their employing agencies, and their dates of employment are not listed in section 832.8 as components of a peace officer's personnel record, they are not made confidential by section 832.7. Based upon its reading of the "plain language" of the statute, the Court of Appeal interpreted the phrase "any file . . . containing records relating to" the enumerated items to mean that "if a file otherwise meeting the definition in Penal Code section 832.8 contains records relating to items specified in subdivisions (a) through (f) of that section, then the entire file is a personnel record and all of the items in the file are confidential." "In other words," the appellate court reasoned, "it is not the enumerated items that are protected, but *any information* in a file maintained by the employing agency that contains records relating to any of the items specified in subdivisions (a) through (f)." The Court of Appeal also concluded that, even if the statute

---

[2] The superior court did not require the Commission to disclose birth dates of the officers or the reasons for their terminations. The Times does not challenge that aspect of the trial court's judgment.

applied only to the types of information specified in section 832.8, the information sought by the Times constituted "employment history" within the meaning of subdivision (a) of section 832.8.

## II.

■ In adopting the California Public Records Act, the Legislature declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) As the result of an initiative measure adopted by the voters in 2004, this principle now is enshrined in the state Constitution: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, . . . the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).) ■ The Constitution, however, also recognizes the right to privacy and specifically acknowledges the statutory procedures that protect the privacy of peace officers. Article I, section 3, subdivision (b)(3) provides that nothing in that subdivision "supersedes or modifies the right of privacy guaranteed by [article I,] Section 1 or affects the construction of any statute . . . to the extent that it protects that right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer."

■ The Legislature, in adopting the Act, also was "mindful of the right of individuals to privacy." (Gov. Code, § 6250.) Accordingly, the Act contains numerous exceptions to the requirement of public disclosure, many of which are designed to protect individual privacy. (See Gov. Code, § 6254.) The public is entitled to inspect public records unless one of the exceptions stated in the Act applies. (Gov. Code, § 6253, subds. (a) & (b).) It is undisputed that the information sought by the Times constitutes a public record and therefore must be disclosed unless one of the Act's exceptions applies.[3]

---

[3] " 'Public records' " include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (Gov. Code, § 6252, subd. (e).) "This definition is intended to cover every conceivable kind of record that is involved in the governmental process and will pertain to any new form of record-keeping instrument as it is developed. Only purely personal information unrelated to 'the conduct of the public's business' could be considered exempt from this definition . . . ." (Assem. Statewide Information Policy Com., Final Rep. (Mar. 1970) 1 Assem. J. (1970 Reg. Sess.) appen. p. 9.) The records at issue in the present case are retained by the Commission, a state agency. They relate to the public's business, because the Commission uses them to monitor the compliance of participating departments with Commission regulations, which is a requirement for eligibility for the services and state funding provided by the Commission. (See § 13523; Cal. Code Regs., tit., 11, §§ 1003 & 9030.) Information stored in a computer database

■ The Act exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).) The disclosure of peace officer personnel records is limited by Penal Code section 832.7, which, as noted above, provides that "[p]eace officer . . . personnel records . . . , or information obtained from these records, are confidential" and may be disclosed in litigation only under specified procedures, which require a showing of good cause. (See Evid. Code, §§ 1043, 1045.) If peace officer personnel records are ordered disclosed, they "may not be used for any purpose other than [the] court proceeding" in which disclosure is ordered. (Evid. Code § 1045, subd. (e); see *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228].) Because section 832.7 deems peace officer personnel records and information obtained from those records to be "confidential," they are exempt from disclosure under the Act. (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1284–1286 [48 Cal.Rptr.3d 183, 141 P.3d 288]; Gov. Code, § 6276.34.) The question before us is whether the Commission's records of the names, employing departments, and dates of employment constitute "peace officer personnel records" under section 832.7.

## A.

■ Peace officer personnel records are defined as "any file maintained under that individual's name by his or her employing agency and containing records relating to" any of a list of enumerated types of information. (§ 832.8.) ■ Although the Commission is not the "employing agency" of the peace officers whose information it maintains, its records nonetheless would be confidential under section 832.7 if they were "obtained from" personnel records maintained by the employing agency. (§ 832.7.)

Peace officers' names, employing agencies, and employment dates are not among the items specifically enumerated in section 832.8 as components of a peace officer's personnel record. The Times contends that the term "personnel records" includes only records of the types of information enumerated in section 832.8—personal information; medical history; election of employee benefits; employee advancement, appraisal, or discipline records; complaints, or investigations of complaints; and other information the disclosure of which would constitute an unwarranted invasion of privacy. The Commission, on the other hand, focuses on the circumstance that section 832.8 defines the term " 'personnel records' " to include "any file . . . containing records

qualifies as a "writing" in this context, because that term is defined broadly to include every "means of recording upon any tangible thing any form of communication or representation . . . and any record thereby created, regardless of the manner in which the record has been stored." (Gov. Code, § 6252, subd. (g).)

relating to" the enumerated types of information. Relying upon this language, the Commission contends that the Court of Appeal was correct in concluding that any information maintained in a file that also contains any of the information enumerated in section 832.8 becomes a confidential personnel record.

" ' "It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; see *People v. Shabazz* (2006) 38 Cal.4th 55, 70 [40 Cal.Rptr.3d 750, 130 P.3d 519]; *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) "To the extent this examination of the statutory language leaves uncertainty, it is appropriate to consider 'the consequences that will flow from a particular interpretation. [Citation.]' (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165 [278 Cal.Rptr. 614, 805 P.2d 873] (*Harris*).) Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result. [Citation.]' (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596].) This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. (*Harris, supra*, at pp. 1165–1166.) Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Fields v. Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].)" (*Copley Press, Inc. v. Superior Court, supra*, 39 Cal.4th at pp. 1291–1292.)

Applying these principles, we conclude that the Court of Appeal's construction of section 832.8, although consistent with the statute's language, is unreasonable because it would lead to arbitrary and anomalous results. Under the Court of Appeal's interpretation, the circumstance that a document was placed into a file that also contained the type of personal or private information listed in the statute would render the document confidential, regardless of whether the document at issue was of a personal or private nature, and regardless of whether it was related to personnel matters. For example, as counsel for the Commission conceded at oral argument, a newspaper article praising or criticizing the particular act of an officer could be deemed confidential if placed into such a file. Also, the same type of information could be rendered confidential in one law enforcement agency if maintained in a file that also contained personal information, but would not be confidential in another agency if maintained in a different type of file.

Furthermore, if records are stored in a computer in electronic form, it would be difficult, if not impossible, to determine which records are contained in the same virtual "file."

■ We consider it unlikely the Legislature intended to render documents confidential based on their location, rather than their content. We commented on a similar question of statutory interpretation in *Williams v. Superior Court* (1993) 5 Cal.4th 337 [19 Cal.Rptr.2d 882, 852 P.2d 377]. There, we addressed the Act's exception for law enforcement investigatory files. (Gov. Code, § 6254, subd. (f).) We held that information in investigatory files remained confidential even after the investigation had ended, but also stated that "the law does not provide . . . that a public agency may shield a record from public disclosure, regardless of its nature, simply by placing it in a file labelled 'investigatory.' " (*Williams v. Superior Court, supra*, at p. 355.) Similarly, we do not believe that the Legislature intended that a public agency be able to shield information from public disclosure simply by placing it in a file that contains the type of information specified in section 832.8.

Cases that have addressed the question whether a particular document is included within the term "personnel files" for purposes of other statutes have found the content of the document at issue, not the location in which it is stored, to be determinative. For instance, in *Braun v. City of Taft* (1984) 154 Cal.App.3d 332 [201 Cal.Rptr. 654], the court addressed the Act's exception for "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (Gov. Code, § 6254, subd. (c).) The appellate court rejected the argument that, because the exemption referred to " 'files,' the Legislature intended to exempt the entire file," and that disclosure of some documents would not be required if other documents in the file were exempt. (*Braun, supra*, at p. 341.) In light of the Legislature's policy favoring disclosure of public records, the court concluded it was "unlikely that the Legislature intended an all or nothing approach." (*Ibid.*)

In *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475], we interpreted Education Code former section 44031, which provided that a school district employee must be given notice of, and the opportunity to comment upon, materials in his or her "personnel files . . . that may serve as a basis for affecting the status of [his or her] employment." The plaintiff in *Miller* was a school principal who claimed that the school board had violated former section 44031 when, in demoting him, it considered several confidential reports to which he was not given the opportunity to respond. The school district argued that the statute did not apply, because the reports at issue never had been entered into plaintiff's personnel file. We rejected this argument. "A school district . . . may not avoid the requirements

of the statute by maintaining a 'personnel file' for certain documents relating to an employee, segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment." (*Miller, supra,* 24 Cal.3d at pp. 712–713.)

Courts have reached a similar conclusion in interpreting the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.), which provides that such officers have the right to review any adverse comment placed in their personnel files and to submit a written response. (Gov. Code, §§ 3305, 3306.) Police officers are entitled to review reports of complaints or similar matters that could affect the status of their employment, regardless of whether the information at issue actually was placed in the officers' personnel files. (*Seligsohn v. Day* (2004) 121 Cal.App.4th 518 [16 Cal.Rptr.3d 909] [police officers entitled to a copy of complaints filed against them with a college, even though investigation of complaints was closed without any action being taken against the officers and copies of the complaints were not placed in the officers' personnel files]; *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916 [124 Cal.Rptr.2d 666] [agency required to disclose to officer information contained in its internal affairs files that did not result in disciplinary action against the officer]; *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241 [247 Cal.Rptr. 909] [officer was entitled to review a complaint that was not investigated and was placed in a confidential investigative file separate from his personnel file]; see also *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793 [118 Cal.Rptr.2d 167, 42 P.3d 1034] [rejecting argument that law enforcement agency was not obligated to permit officer to review and respond to adverse comments because a memorandum summarizing those comments was not prepared and placed in his personnel file until after he was fired].)

Nor is there anything in the legislative history of sections 832.7 and 832.8 to suggest that the Legislature intended to render confidential any and all records that might be filed along with those described in the statute. Section 832.7 is part of a statutory scheme that attempts to protect both "the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227 [114 Cal.Rptr.2d 482, 36 P.3d 21].) Section 832.7 was included in Senate Bill No. 1436 (1977–1978 Reg. Sess.) and enacted into law in 1978 in response to this court's decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

*Pitchess* held that a defendant seeking evidence to support his claim of self-defense in a criminal prosecution for battery committed upon deputy sheriffs had established good cause for the discovery of records of citizen complaints that had been made against those deputies and involved the

excessive use of force. (*Pitchess, supra,* 11 Cal.3d at pp. 537–538.) After this court rendered its decision, concerns were expressed to the Legislature that, in response to *Pitchess,* law enforcement departments were destroying personnel records in order to prevent discovery; in some instances, criminal charges had been dismissed because the records to which the defendant would have been entitled no longer were available. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as introduced, p. 7; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Apr. 3, 1978; Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Aug. 7, 1978.) As a result of these concerns, Senate Bill No. 1436 was enacted, requiring that records relating to citizen complaints be maintained for a period of five years. (Stats. 1978, ch. 630, § 4, p. 2083, amending § 832.5, subd. (b).) The statute also established procedures, consistent with *Pitchess,* permitting discovery of peace officer personnel records in civil or criminal cases only after an in camera review of the records by a judge and a determination that the information sought is relevant to the pending litigation. (Stats. 1978, ch. 630, §§ 1 & 3, pp. 2082–2083, adding Evid. Code, §§ 1043 & 1045.)

It is apparent that the Legislature's major focus in adopting the statutory scheme here at issue was the type of record at issue in *Pitchess*—records of citizen complaints against police officers. The new legislation required that those records be maintained, but provided assurances to peace officers that such records would remain confidential except as necessary in order to ensure a fair trial in civil or criminal proceedings. Nonetheless, the legislation was drafted to include *all* police officer personnel records, not only records of complaints and disciplinary actions. Moreover, the specific categories of information listed in section 832.8's definition of personnel records were themselves broadly drafted. The statute protects "[p]ersonal data," including not only the items specifically listed but also other "similar information." (§ 832.8, subd. (a).) It also protects "[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 832.8, subd. (f).)

The categories of information listed in section 832.8 certainly are sufficiently broad to serve the purposes of the legislation and to protect the legitimate privacy interests of peace officers. To extend the statute's protection to information not included within any of the enumerated categories merely because that information is contained in a file that also includes the type of confidential information specified in the statute would serve no legitimate purpose and would lead to arbitrary results. Therefore, we conclude that peace officer personnel records include only the types of information enumerated in section 832.8.

 
 

## B.

In light of the foregoing, the information sought by the Times is not protected from disclosure by section 832.7 unless the request encompasses one of the types of information enumerated in section 832.8. The Commission contends that peace officers' names, employing agencies, and hiring and termination dates do constitute personnel records because they constitute "employment history . . . or similar information." (§ 832.8, subd. (a).) The Times argues that "employment history" refers only to information about the individual's *previous* employment, that the information obtained by the Commission from the employing department relates to the officer's then current status with that department, and accordingly that this information is neither "employment history" nor "similar information." For the reasons discussed below, we conclude that the Times is correct.

 The language of section 832.8, subdivision (a), viewed in isolation, is ambiguous and susceptible to either interpretation. Accordingly, in construing the phrase "employment history," we keep in mind that "the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context . . . ." (*Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) "[W]hen a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope. [Citations.] In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list. [Citations.]" (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011–1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].)

 Subdivision (a) of section 832.8 refers to "Personal data, including marital status, family members, educational and employment history, home addresses, or similar information." Each of the items listed, including "employment history," is presented as an example of "personal data." The items enumerated in subdivision (a) do not constitute information that arises out of an officer's employment. Rather, they are the types of personal information that commonly are supplied by an employee to his or her employer, either during the application process or upon employment.[4]

Information relating to the officer's *current* position, on the other hand, is addressed in other subdivisions of section 832.8: "(c) Election of employee

---

[4] Peace officers must supply this type of personal information during the application process. The Commission requires that every candidate for employment as a peace officer complete a "personal history questionnaire," which includes, among other matters, personal identifying

benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties." If we were to interpret "employment history" to include information concerning the officer's current position, the phrase "employment history" in subdivision (a) would encompass all of the information listed in subdivision (d)— "[e]mployee advancement, appraisal, or discipline"—rendering subdivision (d) unnecessary and redundant.

Taking into account the personal nature of the information listed in section 832.8, subdivision (a) in contrast to the job-related nature of the information listed in subdivisions (c) through (e), we agree with the conclusion reached by the Court of Appeal in *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883, 891–892 [3 Cal.Rptr.3d 915], that section 832.8, subdivision (a) "presents a list of general pieces of information that might be found on any resume or job application, i.e., the subdivision (a) list would include basic status or identifying information about the employee as he or she came to the job. It does not include any information that would be specific to the current job . . . . Information that is specific to the employee's current status as a peace officer would not be 'similar information' to the other information covered by the statute." (Cf., e.g., *Garden Grove Police Department v. Superior Court of Orange County* (2001) 89 Cal.App.4th 430, 434 [107 Cal.Rptr.2d 642] [birth date of police officer is " 'similar information' " under § 832.8, subd. (a)].)

We find no indication that the Legislature, in adopting sections 832.7 and 832.8, was concerned with making confidential the identities of peace officers or the basic fact of their employment. Rather, the legislative concern appears to have been with linking a named officer to the private or sensitive information listed in section 832.8. The latter statute applies to files "maintained under that individual's name by his or her employing agency and containing records relating to" the enumerated types of information. (§ 832.8.) Thus, the statute prevents the unauthorized disclosure of the specified types of information concerning a named officer. Conversely, a law enforcement agency "may disseminate data regarding the number, type, or disposition of complaints" against its officers "if that information is in a form which does not identify the individuals involved." (§ 832.7, subd. (c).) Under the statute, a personnel record is, by definition, linked to a particular individual. (§ 832.8.) It seems unlikely that the Legislature contemplated that

information, contact information for family members, and educational, residential, and "employment history." (Peace Officer Standards & Training Admin. Manual, Com. Proc. C-1, p. C-1; see also Peace Officer Standards & Training form 2-251 (02/06) [Personal History Statement—Peace Officer].)

the identification of an individual as a peace officer, unconnected to any of the information it defined as part of a personnel record, would be rendered confidential by section 832.8.

A name might be viewed as "personal data" in the broadest sense of that phrase, because it relates to a person. "Personal" generally is defined to mean "of or relating to a particular person." (Webster's 3d New Internat. Dict. (2002) p. 1686; American Heritage Dict. (4th ed. 2000) p. 1311.) The word "personal," however, also carries a connotation of "private," meaning "peculiar or proper to private concerns," "not public or general" (Webster's 3d New Internat. Dict., *supra*, at p. 1686), or "[c]oncerning a particular person and his or her private business, interests, or activities; intimate" (American Heritage Dict., *supra*, at p. 1311). The information specifically listed in section 832.8, subdivision (a), is the type of information that is not generally known to persons with whom officers interact in the course of performing their official duties; it is the type of information that, for reasons of officer safety, should not be revealed to perpetrators or witnesses of crimes. On the other hand, an officer's name and employing agency is information that ordinarily is made available, even to a person who is arrested by the officer, in any number of ways—for example, the officer may identify himself or herself, wear a badge with a name or identification number (as is required for uniformed officers by section 830.10), or sign the police report.[5]

Without a more specific indication in the statute, we hesitate to conclude that the Legislature intended to classify the identity of a public official whose activities are a matter of serious public concern as "personal data." The names of all public employees are viewed as public information under both state and federal law. The Attorney General has long held the position that "the name of every public officer and employee . . . is a matter of public record." (*State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen. 90, 91 (1955) [concluding that state-paid retirement benefits are a matter of public record]; see also *County Payroll Records as Public Records*, 60 Ops.Cal.Atty.Gen. 110 (1977) [county payroll records of names and amounts received by retirees are public records].) Similarly, the names and positions of

---

[5] We do not suggest that the mere fact that officers' names are available from other sources necessarily means that the information cannot be considered personal or private. (See *Department of Defense v. FLRA* (1994) 510 U.S. 487, 500 [127 L.Ed.2d 325, 114 S.Ct. 1006] ["An individual's [privacy] interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form"].) Rather, the public nature of an officer's name and activities is a factor we consider in determining whether the Legislature intended to encompass officers' names within the category of "personal data."

federal employees, past and present, generally are available to the public. (5 C.F.R. § 293.311 (2007).)[6]

The public's legitimate interest in the identity and activities of peace officers is even greater than its interest in those of the average public servant. "Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws of the state. In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers." (*New York Times Co. v. Superior Court* (1997) 52 Cal.App.4th 97, 104–105 [60 Cal.Rptr.2d 410].)[7] "It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an 'on the street' level than in the qualifications

---

[6] Courts in other jurisdictions also have concluded that the names of public employees (including, in some instances, peace officers) are not exempt from disclosure under state public records laws. (See, e.g., *Freedom Newspapers, Inc. v. Tollefson* (Colo.Ct.App. 1998) 961 P.2d 1150, 1155 ["[W]e do not read the statute to exempt from disclosure an employee's name simply because it is an item of information contained in a personnel file"]; *Magic Valley Newspapers v. Medical Center* (2002) 138 Idaho 143 [59 P.3d 314, 316] ["We conclude that had the legislature intended to exempt employees' names from disclosure, it would have expressly so provided"]; *Moak, et al., Aplnt. v. Phila. News., et al.* (1975) 18 Pa.Commw. 599 [336 A.2d 920, 923–924] ["Obviously, the identification of one as a police officer, a position of trust and honor, is quite different from the disclosure of one's dependence upon public assistance, considered by many to be a mark of extreme misfortune, and unhappily by some of incompetence. [¶] . . . [¶] . . . The court below, we believe correctly, decided that the disclosure of one's identity as a city police officer was not an invasion of his privacy"]; *King County v. Sheehan* (2002) 114 Wn.App. 325 [57 P.3d 307, 316, 318] (*Sheehan*) ["No Washington case has held that public employees' names are private and subject to the personal privacy exemption. . . ." "[P]olice officers are public employees, paid with public tax dollars"].)

[7] Indeed, the majority of courts have concluded that the public's interest in the activities of peace officers at every level is such that, for purposes of defamation law, peace officers are public officials who must establish actual malice in order to prevail on a defamation claim. (See *Gomes v. Fried* (1982) 136 Cal.App.3d 924, 932–934 [186 Cal.Rptr. 605] and cases cited therein; see also *Moriarty v. Lippe* (1972) 162 Conn. 371 [294 A.2d 326, 330–331] ["Although a comparably low-ranking government official, a patrolman's office, if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position"]; *Roche v. Egan* (Me. 1981) 433 A.2d 757, 762 ["The police detective, as one charged with investigating crimes and arresting the criminal, is in fact, and also is generally known to be, vested with substantial responsibility for the safety and welfare of the citizenry in areas impinging most directly and intimately on daily living: the home, the place of work and of recreation, the sidewalks and streets"]; *Rotkiewicz v. Sadowsky* (2000) 431 Mass. 748 [730 N.E.2d 282, 287] ["We conclude, because of the broad powers vested in police officers and the great potential for abuse of those powers, as well as police officers' high visibility within and impact on a community, that police officers, even patrol-level police officers such as the plaintiff, are 'public officials' for purposes of defamation"]; *Hall v. Rogers* (R.I. 1985) 490 A.2d 502, 504 [police sergeant and his son, a special police officer, were public officials; the court noted "the uniformity of treatment by other state and federal courts of police officers as public officials"]; Annot., Who is "Public Official" for Purposes of Defamation Action (1996) 44 A.L.R.5th 193, 225, and cases summarized therein at pp. 281–313.)

and conduct of other comparably low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm . . . ." (*Coursey v. Greater Niles Twn. Pub. Corp.* (1968) 40 Ill.2d 257 [239 N.E.2d 837, 841]; see *Gomes v. Fried, supra,* 136 Cal.App.3d 924, 933, quoting *Coursey.*)

There is some tension between the public's interest in peace officers' activities (as recognized in these authorities) and the level of protection afforded to peace officer "personnel records" in section 832.7, but we may assume that in defining personnel records the Legislature drew the line carefully, with due concern for the competing interests. Had the Legislature intended to prevent the disclosure of officers' identities as such, an obvious solution would have been to list "name" as an item of "[p]ersonal data" under subdivision (a) of section 832.8. (See, e.g., Civ. Code, § 1798.3, subd. (a) [defining " 'personal information,' " for purposes of the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.), as "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history"]; Code Civ. Proc., § 237, subd. (a)(2) [defining "personal juror identifying information" as "consisting of names, addresses, and telephone numbers"]; Gov. Code, § 11015.5, subd. (d)(1) [defining " '[e]lectronically collected personal information' " as "any information that is maintained by an agency that identifies or describes an individual user, including, but not limited to, his or her name . . . ."].)

Our decision in *Copley Press, Inc. v. Superior Court, supra,* 39 Cal.4th 1272, does not support the proposition that lists of names of peace officers, identified in conjunction with their employing departments and dates of employment, constitute confidential personnel records. In *Copley Press,* we held that records of peace officer disciplinary appeals maintained by the County of San Diego Civil Service Commission constituted confidential personnel records under section 832.7, and that the Court of Appeal had erred in ordering disclosure of the name of the deputy involved in a particular matter. We concluded that section 832.7, subdivision (a), "is designed to protect, among other things, *'the identity of officers' subject to complaints.*" (*Copley Press, supra,* 39 Cal.4th at p. 1297, quoting *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440, fn. 3 [38 Cal.Rptr.2d 632], italics added.) We disagreed with the statement in *New York Times Co. v. Superior Court, supra,* 52 Cal.App.4th 97, 101, that " '[u]nder [Penal Code] sections 832.7 and 832.8, an individual's name is not exempt from disclosure,' " but our disagreement was qualified: we concluded that this broad assertion was incorrect "at least insofar as it applies to disciplinary matters like the one at issue here" (*Copley Press, supra,* at p. 1298).

Unlike *Copley Press, Inc. v. Superior Court, supra,* 39 Cal.4th 1272, and *City of Richmond v. Superior Court, supra,* 32 Cal.App.4th 1430, the case before us does not involve the identification of an individual as the officer involved in an incident that was the subject of a complaint or disciplinary investigation. The officers' names, employing departments, and dates of employment were not sought in conjunction with any of the personal or sensitive information that the statute seeks to protect. We conclude that the information ordered to be disclosed by the Commission is not "[p]ersonal data" within the meaning of section 832.8, subdivision (a).[8]

### III.

Finally, the Commission contends that even if the information sought by the Times was not obtained from police personnel records as defined in section 832.8, the records at issue are nevertheless exempt from disclosure under the Act. The Act exempts from disclosure "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (Gov. Code, § 6254, subd. (c).) The Commission contends that peace officers have legitimate concerns relating to annoyance, embarrassment, or oppression, as well as physical threats to themselves and their families, that outweigh any public interest in disclosure.

We assume for purposes of analysis that the records at issue may be characterized as "[p]ersonnel . . . or similar files." (Gov. Code, § 6254, subd. (c).)[9] The Act exempts such files only if their disclosure would constitute "an unwarranted invasion of personal privacy." (Gov. Code, § 6254, subd. (c).) This exemption requires us to balance the privacy interests of peace officers in the information at issue against the public interest in disclosure, in order to determine whether any invasion of personal privacy is "unwarranted." The Commission has the burden of demonstrating that the records at issue are exempt. (Gov. Code, § 6255.)

The public's interest in the qualifications and conduct of peace officers is substantial, a circumstance that both diminishes and counterbalances any expectation officers may have that their names and employment as peace officers will be confidential. Peace officers "hold one of the most powerful positions in our society; our dependence on them is high and the potential for abuse of power is far from insignificant." (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1428 [44 Cal.Rptr.2d 532].) A police officer "possesses both the authority and the ability to exercise force. Misuse of his

---

[8] In light of our conclusions, we need not and do not address the parties' contentions regarding the sufficiency of the declaration of Paul Harman to establish that the information at issue was obtained from peace officer personnel files.

[9] Unlike section 832.8, the Act does not contain a definition of personnel files.

authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss." (*Gray v. Udevitz* (10th Cir. 1981) 656 F.2d 588, 591.)

The public has a legitimate interest not only in the conduct of individual officers, but also in how the Commission and local law enforcement agencies conduct the public's business. As noted above, the Commission maintains the records at issue in order to monitor participating agencies' compliance with Commission regulations, a matter of interest to the members of the public served by those agencies. Furthermore, the Times has articulated a particular interest in why and how often peace officers leave one agency in order to serve in another, whether particular agencies are better able to retain more experienced officers, and whether officers who are dismissed from one or more agencies nonetheless are hired by another. The information contained in the Commission's records would enable the Times to trace officers' movements from one agency to another and to identify both general trends and specific instances of potentially inappropriate employment practices, and to conduct followup research.[10] The public clearly has a legitimate interest in the matters that the Times seeks to investigate.

▮▮▮ The Commission has not established that the typical peace officer has more than an insubstantial privacy interest in the fact of his or her employment as an officer. "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).)[11] ▮▮▮ We recognize that individuals generally have some level of privacy "interest in controlling the dissemination of information regarding personal matters." (*Department of Defense v. FLRA, supra,* 510 U.S. at p. 500 [holding that home addresses of public employees are exempt from disclosure under the Freedom of Information Act (5 U.S.C. § 552)].) We do not view the fact of an individual's *public* employment, however, as a *personal* matter. Furthermore, dissemination of information concerning where and when a particular individual has served as

---

[10] These particular interests would not be served if, as suggested by the dissenting justice in the Court of Appeal, the Commission were to provide the information sought by the Times but redact the officers' names and substitute a "nonidentifying tracking designation." Access to the officers' names would permit the Times to conduct followup inquiries regarding specific examples of any trends identified by the Times and to examine their causes and effects.

[11] Our decision in *Hill, supra,* 7 Cal.4th 1, defined the elements that must be proved in order to establish a claim for invasion of the state constitutional right of privacy. Although we find the definition of privacy used in *Hill* to be useful in the present context, we do not intend to suggest that an intrusion upon a privacy interest must rise to the level of an invasion of the constitutional right of privacy in order to be recognized under Government Code section 6254, subdivision (c).

a peace officer is not likely to cause "unjustified embarrassment or indignity." (*Hill, supra*, 7 Cal.4th at p. 35.) To the contrary, a peace officer occupies an especially honorable position, one vested with great responsibility, trust, and confidence.

We find no well-established social norm that recognizes a need to protect the identity of all peace officers. Peace officers operate in the public realm on a daily basis, and identify themselves to the members of the public with whom they deal. Indeed, uniformed peace officers are required to wear a badge or nameplate with the officer's name or identification number. (§ 830.10.) In support of its contention that peace officers have a privacy interest in maintaining the confidentiality of their names and employing departments, the Commission relies upon the Legislature's enactment of statutes that render peace officer personnel records confidential. (§§ 832.7 & 832.8.) But because we have concluded that those statutes do not protect an officer's name, employing department, and dates of employment, they do not support the argument that peace officers have a recognized privacy interest in such innocuous information.

The Commission asserts that in light of the "dangerous and demanding work" performed by peace officers, releasing such information to the public creates a "potential for mischief." We readily acknowledge that throughout the state there are some officers working in agencies who, because of their particular responsibilities, require anonymity in order to perform their duties effectively or to protect their own safety. (See *People v. Kunkin* (1973) 9 Cal.3d 245, 256, fn. 14 [107 Cal.Rptr. 184, 507 P.2d 1392] [recognizing that disclosure of a roster of undercover narcotics agents could subject the officers and their families to the possibility of danger].) If the duties of a particular officer, such as one who is operating undercover, demand anonymity, the need to protect the officer's safety and effectiveness certainly would justify the Commission in withholding information identifying him or her under Government Code section 6255, subdivision (a), which permits records to be withheld if "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." The public has a strong interest in maintaining the safety and efficacy of its law enforcement agencies. But "[t]he prospect that somehow this information in the hands of the press will increase the danger to some . . . cannot alone support a finding in favor of nondisclosure as to all." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652 [230 Cal.Rptr. 362, 725 P.2d 470].) The means for protecting such officers is to segregate the information relating to them from the records that are disclosed. The Act provides that if material that is exempt from disclosure reasonably can be segregated from material that is not exempt, segregation is required. (Gov. Code, § 6253, subd. (a); see *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 453, fn. 13 [186 Cal.Rptr. 235, 651 P.2d

822]; *Northern Cal. Police Practices Project v. Craig* (1979) 90 Cal.App.3d 116, 124 [153 Cal.Rptr. 173].)

The safety of peace officers and their families is most certainly a legitimate concern, but the Commission's contention that peace officers in general would be threatened by the release of the information in question is purely speculative. "A mere assertion of possible endangerment" is insufficient to justify nondisclosure. (*CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 652; cf. *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1346 [283 Cal.Rptr. 893, 813 P.2d 240] [declaration of Governor's security director supported conclusion that release of his schedules would present a potential security threat].) The Commission has not offered any persuasive illustration of how disclosure of the innocuous information at issue could "create mischief" for peace officers in general.[12]

In the trial court, the Commission argued that persons who were hostile toward law enforcement officers generally (though not toward a particular individual officer) might use the list of names to locate peace officers' addresses through other means (such as Internet resources) and harass them. It offered no evidence that such a scenario is more than speculative, or even that it is feasible.[13] Furthermore, by virtue of the visibility of their activities in the community, the identity of many officers is well known or readily

---

[12] The Commission cites *Stone v. F.B.I.* (D.D.C. 1990) 727 F.Supp. 662, 664–665, in support of its contention that the disclosure of peace officers' names would constitute an invasion of privacy, but that case supports the opposite conclusion. In *Stone,* an action was brought under the Freedom of Information Act seeking the names of the FBI and local law enforcement officers who participated in the investigation of the assassination of Robert F. Kennedy. The FBI opposed the request, and the trial court held that the FBI had met its burden of proving that the disclosure of the names "could reasonably be expected to constitute an unwarranted invasion of personal privacy." (5 U.S.C. § 552(b)(7)(C); *Stone v. F.B.I.,* at p. 663.) The court rejected the plaintiff's argument that the FBI's practice of generally encouraging publicity about its agents was relevant. "What could reasonably be expected to constitute an unwarranted invasion of an agent's privacy is not that he or she is revealed as an FBI agent but that he or she is named as an FBI agent *who participated in the RFK investigation.*" (*Stone v. F.B.I., supra,* 727 F.Supp. at p. 665, original italics, citing *Halloran v. Veterans Admin.* (5th Cir. 1989) 874 F.2d 315, 321 ["[O]ur concern is not with the identifying information *per se,* but with the connection between such information and some other detail—a statement, an event, or otherwise—which the individual would not wish to be publicly disclosed"].) By contrast, in the present case, the information sought merely would reveal that the named individuals had worked as peace officers; it would not reveal their involvement in any particular case.

[13] The Legislature already has taken steps to protect peace officers from persons who might do them harm by requiring that at the request of an officer, his or her home address as listed in Department of Motor Vehicles records be kept confidential (Veh. Code, § 1808.4, subd. (a)(11)), and prohibiting the disclosure of officers' home addresses on voter registration cards (Elec. Code, § 18110). In addition, the disclosure or distribution of a peace officer's home address is, under some circumstances, a crime. (Gov. Code, §§ 6254.21 & 6254.24 [posting the home address or telephone number of any public safety official, including any peace officer, on the Internet with malicious intent is a misdemeanor]; Pen. Code, § 146e,

obtainable.[14] The Commission has not provided any convincing rationale for its assertion that disclosing a comprehensive list of officers' names and employing departments (with the exceptions noted above) would increase the threat to officer safety presented by those with a generalized hostility toward law enforcement officers.

■ For these reasons, we conclude that the privacy and safety interests of peace officers in general do not outweigh the public's interest in the disclosure of the information sought by the Times. The Commission's records, however, may contain some information that should be exempted from disclosure. The Commission consistently has taken the position that all of the information sought by the Times is confidential; the Commission did not assert in the superior court, and has not contended on appeal, that information concerning particular officers or categories of officers should be exempt from disclosure because of the special nature of their duties. When the subject of undercover officers was touched upon briefly at the hearing in the superior court, the court appeared to assume that undercover officers would not be employing their real names and, accordingly, that their identities would not be revealed if the records at issue were to be disclosed. Because the issue was not fully explored in the superior court, it is not clear whether the records at issue in the present case contain information that might threaten to reveal the identities of undercover officers or other officers who have an interest in maintaining anonymity. The interest of both the individual officer and the public in peace officer safety and effectiveness is significant, and the Commission therefore should have the opportunity to demonstrate in the superior court that information concerning particular officers should be exempted from disclosure under Government Code section 6254, subdivision (c) or section 6255 and the applicable legal principles set forth in this opinion.

## IV.

For the reasons stated above, the judgment rendered by the Court of Appeal is reversed, and the case is remanded to that court with directions to remand to the superior court for further proceedings consistent with this opinion.

Werdegar, J., Moreno, J., and Corrigan, J., concurred.

---

subd. (a) [disclosure of home address or telephone number of peace officer or peace officer's family member with malicious intent is a misdemeanor].)

[14] The Washington Court of Appeals used similar reasoning in holding that the provisions of its state's public records law require the release of the names and ranks of a county's peace officers. (*Sheehan, supra,* 57 P.3d at pp. 315–319.) "Names . . . are released on a regular basis as a necessary incident of everyday life. Police officers release their names when they put on their uniforms, pin on their badges and name tags, and appear in public each day. The County routinely releases police officers' names on a per-incident basis." (*Id.* at p. 318.)

**KENNARD, J., Concurring and Dissenting.**—The majority holds that a public agency charged with improving and maintaining the professional qualifications of California's peace officers must disclose for the years 1991 through 2001 the names, employing agencies, hiring dates, and firing dates of all peace officers in the state. I agree with the majority that the statutes in question require the release of the requested peace officer names. But I do not agree that the relevant statutes permit disclosure of each peace officer's employing agency or agencies and the dates of each officer's hiring and termination by that agency or agencies, because in my view that information is "employment history," which the Legislature has expressly made confidential under Penal Code sections 832.7 and 832.8.

## I

The Commission on Peace Officer Standards and Training (POST) is a state agency that is responsible for statewide training and certifying the qualifications of peace officers. It collects information maintained in a electronic database on virtually every peace and custodial officer in the state. This case arises from a request by the Los Angeles Times to POST for information from that database listing the names, employing agencies, and hiring and termination dates of all peace officers who served at any time from 1991 through 2001. POST refused to release the information, maintaining that peace officer personnel records are confidential under Penal Code sections 832.7 and 832.8. The trial court concluded otherwise, and ordered POST to provide the requested information to the newspaper. The Court of Appeal reversed, holding that the information sought was confidential, and not subject to disclosure, because it was obtained from a personnel file maintained by the peace officers' employing agency, and because it constituted "employment history," an item expressly listed as confidential in subdivision (a) of Penal Code section 832.8.

The majority here properly rejects the notion that the information sought is confidential because it is the type of information that is normally contained in a personnel file. Then it considers whether a named officer's employing agency, hiring dates and termination dates are employment history, and it concludes that they are not, based on its determination that the term employment history, "viewed in isolation, is ambiguous and susceptible" to interpretation. (Maj. opn., *ante,* at p. 294.) Unlike the majority, I see no ambiguity in the statutory language, as I explain below.

## II

In determining the meaning of a statute we look first to its language as " ' "the most reliable indicator of legislative intent," ' " giving the words used " ' "their ordinary and usual meaning," ' " and construing them in their statutory context. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199 [46 Cal.Rptr.3d 41, 138 P.3d 193].) " 'If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' " (*People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636], quoting *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].)

In addition to this general maxim of statutory construction, of relevance here is a provision of the California Constitution. In November 2004, the voters passed Proposition 59, an initiative measure reaffirming a principle long ago established by the California Public Records Act (Gov. Code, § 6250 et seq.) that the people have a right to access to information concerning the conduct of the people's business. (Cal. Const., art. I, § 3, subd. (b)(1).) Although the initiative expressly preserved privacy protections contained in existing statutes, including "any statutory procedures" concerning the "professional qualifications of a peace officer" (Cal. Const., art. I, § 3, subd. (b)(3)), it also directed courts to narrowly construe a statute "if it limits the [people's] right of access" to information. (Cal. Const., art. I, § 3, subd. (b)(2).) The confidentiality created for peace officer personnel records by Penal Code sections 832.7 and 832.8, which existed long before the 2002 passage of Proposition 59, must be read in light of these principles.

Penal Code section 832.7, subdivision (a), makes peace officer personnel records "confidential." Its companion statute, Penal Code section 832.8, describes a peace officer's personnel record as "any file maintained under that individual's name" and containing certain enumerated types of information— personal data, medical history, election of employee benefits, employee advancement, appraisal or discipline, and complaints about professional performance. (Pen. Code, § 832, subds. (a)–(e).) The section's focus is on "information" about an officer that is confidential; indeed, after setting out various specific categories of information, it concludes with the following catchall provision: *"Any other information* the disclosure of which would constitute an unwarranted invasion of privacy." (Pen. Code, § 832.8, subd. (f), italics added.) Thus, the statutory confidentiality of personnel records is accorded to enumerated, and to otherwise private, information that is linked to a named officer. An officer's name is nowhere mentioned in the list of enumerated confidential information.

But employment history is expressly mentioned in subdivision (a), which lists: "Personal data, including marital status, family members, educational

and *employment history*, home addresses, or similar information." (Pen. Code, § 832.8, subd. (a), italics added.) Looking at the other items enumerated in subdivision (a), the majority reasons that the examples of personal data set out are all " 'basic status or identifying information about the employee as he or she came to the job.' " (Maj. opn., *ante*, at p. 295.) Such information is not "information that arises out of an officer's employment." (Maj. opn., *ante*, at p. 294.) Accordingly, the majority concludes, "employment history" is limited to previous employers and previous dates of employment supplied by a job applicant. And the majority seeks to bolster its conclusion that subdivision (a) concerns only information about *applicants* for jobs by citing other subdivisions of the statute that, according to the majority, apply only to *current employees*.

But subdivisions (b) through (e) of Penal Code section 832.8 make no such distinction between applicant information and current employee information. Although "[e]lection of employee benefits" in subdivision (c) applies to current employees, "[m]edical history" in subdivision (b) does not, because a peace officer's medical history both as a job applicant *and* as a current employee is relevant to his current employment. In so narrowly construing the term "employment history," as used in subdivision (a) of Penal Code section 832.8, the majority ignores the plain language of the statute to find ambiguity based on its structure.

I would instead look to the plain language of the statute and give the term "employment history" its commonly understood meaning: a listing of employers together with the starting and ending dates of employment for each employer. Under that definition the information sought by the Los Angeles Times is employment history and therefore confidential under section 832.8 of the Penal Code.

The Legislature has already decided that a peace officer's employment history is confidential. Whether that is a good or bad policy choice is not a decision for this court to make. (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1263 [8 Cal.Rptr.3d 532, 82 P.3d 740].)

CHIN, J., Dissenting.—As a court, we have a "limited role" in interpreting statutes enacted by the Legislature. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175] (*California Teachers*).) Our role is "not to establish policy" (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1140 [90 Cal.Rptr.2d 804, 988 P.2d 1083]) or to "inquir[e] into the 'wisdom' of" the Legislature's "policy choices." (*People v. Bunn* (2002) 27 Cal.4th 1, 17 [115 Cal.Rptr.2d 192, 37 P.3d 380].) It is to "follow the Legislature's intent,

as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' [Citation.]" (*California Teachers, supra,* at p. 632.) In short, we have neither prerogative nor power "to substitute our public policy judgment for that of the Legislature. [Citation.]" (*Thomas v. City of Richmond* (1995) 9 Cal.4th 1154, 1165 [40 Cal.Rptr.2d 442, 892 P.2d 1185].)

In my view, the Legislature's intent, as exhibited by the plain meaning of the relevant statutory language, was to include the information requested here from the Commission on Peace Officer Standards and Training (Commission)—peace officers' names, employing departments, and dates of employment—as "personnel records" within the meaning of Penal Code sections 832.7 and 832.8.[1] I therefore dissent from the majority's conclusion, which, contrary to the principles set forth above, improperly disregards *the Legislature's* policy decision regarding the public's interest in " 'the qualifications and conduct of law enforcement officers' " (maj. opn., *ante,* at p. 297), and substitutes the majority's different view on that subject.

## I. THE REQUESTED INFORMATION IS CONFIDENTIAL UNDER SECTIONS 832.7 AND 832.8.

As the majority explains, the issue here is whether the Commission's records of officers' names, employing departments, and dates of employment are " '[p]eace officer . . . personnel records . . . , or information obtained from these records' " under section 832.7, subdivision (a). (Maj. opn., *ante,* at p. 289.) If they are, then they are "confidential" and they may "not be disclosed in any criminal or civil proceeding except by discovery pursuant to" specified provisions of the Evidence Code. (Pen. Code, § 832.7, subd. (a).) If they are not, then because they are public records, they may be obtained through a request under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.), unless some other disclosure exception applies.

Section 832.8 specifies the "mean[ing]" of the term "personnel records" for purposes of applying section 832.7. It provides: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the

---

[1] All further unlabeled statutory references are to the Penal Code.

manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." The question here is whether the requested information at issue falls within any of these categories.

Under well-settled principles, to answer this question of statutory construction, we must "first look at the actual words of the statute, 'giving them a plain and commonsense meaning.' [Citation.] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' " ' [Citation.]" (*People v. Tindall* (2000) 24 Cal.4th 767, 772 [102 Cal.Rptr.2d 533, 14 P.3d 207].) " 'One who contends that a provision of an act must not be applied according to the natural or customary purport of its language must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning.' [Citation.]" (*Leroy T. v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665] (*Leroy T.*).)

Under the plain and commonsense meaning of the relevant statutory language, the records at issue here qualify as "personnel records" within the meaning of section 832.8, subdivision (a). As noted above, in relevant part, that subdivision defines "personnel records" as records relating to "[p]ersonal data, including marital status, family members, educational and employment history, home addresses, or similar information." (*Ibid.*) In my view, the term "[p]ersonal data" (*ibid.*), as commonly understood, includes a person's name. Notably, the majority agrees that under the "general[]" dictionary definition of the term "personal," "[a] name might be viewed as 'personal data' . . . because it relates to a person." (Maj. opn., *ante*, at p. 296.) Indeed, this construction is consistent with prior decisions in which we have characterized a person's name as "personal data" (*Estate of MacDonald* (1990) 51 Cal.3d 262, 265, fn. 2 [272 Cal.Rptr. 153, 794 P.2d 911]; see *Boyer v. United States F. & G. Co.* (1929) 206 Cal. 273, 275 [274 P. 57]), and "personal information" (*People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1139 [7 Cal.Rptr.3d 315, 80 P.3d 201]). As for the officers' employing departments and dates of employment, this information qualifies under the common and ordinary understanding of the term "employment history," which is one of the listed examples of confidential "[p]ersonal data" in section 832.8, subdivision (a). (See American Heritage Dict. (4th ed. 2000) p. 833 [defining "history" as "a chronological record of events"].)

In my view, the majority has not met its burden, as set forth above, to justify its refusal to apply section 832.8, subdivision (a), " 'according to the

natural or customary purport of its language.' " (*Leroy T.*, *supra*, 12 Cal.3d at p. 438.) Regarding officers' names, the majority "assume[s] that in defining personnel records the Legislature drew the line carefully" and would have expressly "list[ed] 'name' as an item of '[p]ersonal data' " had it "intended to prevent the disclosure of officers' identities as such." (Maj. opn., *ante*, at p. 298.) The majority's assumptions are inconsistent with the language of section 832.8, subdivision (a), which defines "personnel records" as records relating to "[p]ersonal data, *including* marital status, family members, educational and employment history, home addresses, *or similar information*." (Italics added.) As we have often explained, the word "including" is ordinarily a term of enlargement, not of limitation; it expands, rather than contracts, the meaning of a word. (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774 [117 Cal.Rptr.2d 574, 41 P.3d 575]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 582 [94 Cal.Rptr.2d 3, 995 P.2d 139].) Moreover, the phrase "or similar information" also obviously expands the scope of the term "[p]ersonal data" as used in section 832.8, subdivision (a). (See *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 434 [107 Cal.Rptr.2d 642] ["the term 'similar information' signifies [the Legislature's] intent to include other things relating to the listed items . . . which are not expressly listed"].) Given the statutory language, the majority errs in reasoning that the Legislature "carefully" drew a "line" between protected and unprotected information and meant to exclude information other than that expressly listed. (Maj. opn., *ante*, at p. 298.) Indeed, given the broadly inclusive language the Legislature chose, the more reasonable conclusion is that the Legislature would have expressly exempted an officer's name from the protections of section 832.7 had it intended to exclude this quintessential piece of "[p]ersonal data." (§ 832.8, subd. (a).)

The majority also argues that the word "personal" may "carr[y] a connotation of 'private,' " i.e., " 'proper to private concerns,' " concerning someone's " 'private business, interests, or activities; intimate.' " (Maj. opn., *ante*, at p. 296.) Of course, had the Legislature intended to limit the scope of section 832.8, subdivision (a), to private and intimate information, the Legislature could easily and clearly have done so simply by rewriting the provision as the majority does when it refers to information that is "personal *or private*." (Maj. opn., *ante*, at p. 296, fn. 5, italics added.) Moreover, the listed examples of "[p]ersonal data" in section 832.8, subdivision (a), affirmatively demonstrate that the Legislature was *not* using the term in this sense. Among the listed items are "educational and employment history." (*Ibid.*) There is nothing particularly private or intimate about a police officer's educational or employment history.[2] (*Department of State v. Washington Post*

---

[2] Nor, contrary to the majority's assertion, is an officer's educational and employment history "the type of information that, for reasons of officer safety, should not be revealed to perpetrators or witnesses of crimes." (Maj. opn., *ante*, at p. 296.)

*Co.* (1982) 456 U.S. 595, 600 [72 L.Ed.2d 358, 102 S.Ct. 1957] ["employment history . . . is not normally regarded as highly personal"].) Nor does that history relate only to a police officer's private business or activities. On the contrary, an officer's educational and employment history are highly relevant to something the majority insists is of substantial "public" interest: the officer's "qualifications" for a law enforcement position. (Maj. opn., *ante*, at p. 299.) Given the Legislature's express inclusion of "educational and employment history" as protected "[p]ersonal data" (§ 832.8, subd. (a)), the majority errs in restricting the scope of "[p]ersonal data" section 832.8, subdivision (a) encompasses based on the fact the word "personal" may carry a connotation of private or intimate. (Cf. *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560] [examples expressly listed in statute do not "share any unifying trait which would serve to restrict the meaning of the [statutory] phrase"].)

For a number of reasons, I also disagree with the majority that, given the Attorney General's "long held" view that " 'the name of every public officer and employee . . . is a matter of public record,' " we should disregard the statutory language's ordinary meaning and require "a more specific indication" that officers' names are protected " 'personal data' " under section 832.8, subdivision (a). (Maj. opn., *ante*, at p. 296.) First, neither of the two Attorney General opinions the majority cites in support of its view (*ibid.*) specifically concerned peace officers. (*County Payroll Records as Public Records*, 60 Ops.Cal.Atty.Gen. 110 (1977); *State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen. 90, 91 (1955).) Second, the earlier opinion, which served as the sole authority for the later one, cited no authority and offered no analysis for its assertion that "it is a fact that the name of every public officer and employee . . . is a matter of public record." (*State Employees' Retirement Act, supra,* 25 Ops.Cal.Atty.Gen. at p. 91.) Third, that a public employee's name is a public record is not in dispute here; on the contrary, as the majority explains, "[i]t is undisputed that the information sought [here] . . . constitutes a public record," and the only issue is whether one of the CPRA's exceptions exempt that public record from disclosure. (Maj. opn., *ante*, at p. 288.)[3] Which leads me to the fourth and final reason I disagree with the majority's reliance on these opinions: the later one expressly recognized that certain of the CPRA's provisions "specifically exempt[]" otherwise public records from disclosure, and it applied the very exemption at issue here, i.e., Government Code section 6254, subdivision (k), which exempts " '[r]ecords the disclosure of which is exempted or prohibited pursuant to federal or state law, including but not limited to, provisions of the Evidence Code relating to privilege.' "

---

[3] Because the CPRA only requires disclosure of "[p]ublic records" (Gov. Code, § 6253, subd. (a)), the question of an exemption's applicability presupposes that the information in question is a public record. Thus, that a public employee's name is a public record is of no analytical significance.

(*County Payroll Records as Public Records, supra,* 60 Ops.Cal.Atty.Gen. at p. 113, quoting Gov. Code, § 6254, subd. (k).) For all of these reasons, nothing in the cited Attorney General opinions justifies the majority's demand for greater specificity.[4]

I also disagree with the majority's view that in passing sections 832.7 and 832.8, the Legislature was only concerned about "linking a named officer to the private or sensitive information listed in" the latter section. (Maj. opn., *ante,* at p. 295.) By its express terms, section 832.7, subdivision (a), makes "confidential" all qualifying "personnel records" and all "information obtained from these records," and it precludes "disclos[ure]" of all such records and information except as authorized by statute. Thus, information that qualifies under section 832.8 as a "personnel record[]" is confidential and may not be disclosed even if the proposed disclosure would not be "link[ed]" to a particular officer's name. (Maj. opn., *ante,* at p. 295.) The Attorney General confirmed this view of the statutes in a 1988 opinion concluding that sections 832.7 and 832.8, as they then read, precluded release to the public of summary and statistical information regarding citizen complaints against peace officers, even if the officers were not identified. (71 Ops.Cal.Atty.Gen. 247 (1988).) The Legislature responded to the Attorney General's opinion by enacting what is now section 832.7, subdivision (c), which provides that a department "may disseminate data regarding the number, type, or disposition of complaints . . . made against its officers if that information is in a form which does not identify the individuals involved." (See Stats. 1989, ch. 615, § 1, pp. 2060, 2061.) This *express* authorization to release certain information "in a form which does not identify" the officer (§ 832.7, subd. (c)) would be unnecessary if, as the majority erroneously reasons, the statute only precludes disclosure of confidential information that is "link[ed]" to a particular officer's name. (Maj. opn., *ante,* at p. 295.) Moreover, this exception to confidentiality is limited in two important respects: (1) it applies only to a very small subset of the information specified as confidential in section 832.8, i.e., "data regarding the number, type, or disposition of complaints" made against officers (§ 832.7, subd. (c)); and (2) even as to this small subset, it merely *permits,* and does not require, disclosure. (*Ibid.* [department "may" disclose specified information].) In other words, the subdivision authorizes a department to refuse to disclose the specified information even in a form that does

---

[4] The majority's reliance on decisions from "other jurisdictions" (maj. opn., *ante,* at p. 297, fn. 6) is equally unconvincing. None of the cited cases involved provisions similar to sections 832.7 and 832.8, two did not even involve peace officers, and three were decided decades after the Legislature passed sections 832.7 and 832.8. (See *Freedom Newspapers, Inc. v. Tollefson* (Colo.Ct.App. 1998) 961 P.2d 1150; *Magic Valley Newspapers v. Medical Center* (2002) 138 Idaho 143 [59 P.3d 314]; *Moak, et al., Aplnt. v. Phila. News., et al.* (1975) 18 Pa.Commw. 599 [336 A.2d 920]; *King County v. Sheehan* (2002) 114 Wn.App. 325 [57 P.3d 307].) For these reasons, these non-California decisions are irrelevant to determining the intent of the Legislature in enacting sections 832.7 and 832.8.

not identify the officers, and it confers no discretion to disclose any of the other information section 832.8 makes confidential. Thus, contrary to the majority's analysis (maj. opn., *ante*, at pp. 295–296), subdivision (c) of section 832.7 does not in any way support the majority's view that the Legislature, in passing sections 832.7 and 832.8, was only concerned about "linking a named officer to the private or sensitive information listed in" the latter section. (Maj. opn., *ante*, at p. 295.) On the contrary, in view of its limitations, as described above, the subdivision actually supports the opposite conclusion.

Regarding officers' employing departments and dates of employment, I find equally unconvincing the majority's justifications for ignoring the ordinary meaning of the term "employment history" (§ 832.8, subd. (a)) and holding that the term includes only " 'basic status or identifying information about the employee as he or she came to the job' " and " 'does not include any information that would be specific to the current job.' " (Maj. opn., *ante*, at p. 295.)[5] The majority first asserts that "[t]he items enumerated in subdivision (a) [of section 832.8] do not constitute information that arises out of an officer's employment." (Maj. opn., *ante*, at p. 294.) Of course, this assertion ignores the common understanding of the term "employment history," and is true only if one interprets that term as the majority ultimately does, i.e., to exclude any information regarding an officer's current job. In other words, the majority's assertion, which the majority offers as the first step towards its conclusion, already *assumes* its conclusion. Moreover, the majority's assertion is erroneous as to officers who pursue education that is necessary to obtain, keep, or advance to a particular position; as to these officers, aspects of their "educational . . . history," which is one of the items subdivision (a) enumerates, would in fact arise out of their employment. The majority next asserts that interpreting the term " 'employment history' " in subdivision (a) to include information about an officer's current position would "render[] subdivision (d) [of section 832.8] unnecessary and redundant," because "all of the information listed in subdivision (d)" would be "encompass[ed]" by the term " 'employment history' " in subdivision (a). (Maj. opn., *ante*, at pp. 294–295.) I disagree; in my view, although the name of a person's employer and the dates of the person's hiring and termination clearly and necessarily fall within the ordinary meaning of the term "employment history," the same cannot be said of any and all records relating to "[e]mployee advancement, appraisal, or discipline," which are the records specified in subdivision (d). Thus, although following the ordinary meaning of the statutory language would produce *some* overlap between subdivisions (a) and (d), it would not, as the majority asserts, render the latter completely redundant and unnecessary. Any minor redundancy would not at all impair subdivision (d)'s distinct purpose: to clarify that the records specified in that

---

[5] I note that an officer's name meets these criteria. It is not clear, then, why the majority concludes that section 832.8, subdivision (a), does not include this information.

subdivision, which may or may not constitute "employment history" under section 832.8, subdivision (a), nevertheless are confidential "personnel records" within the meaning of section 832.7. Thus, the majority's analysis of the statutory language is unconvincing.

Moreover, the majority's construction of the phrase "employment history" is problematic when that phrase is viewed, as it should be, "in the context of the statute as a whole." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) In construing a statute, unless a contrary intent appears, we "presume[]" the Legislature "intended that similar phrases be accorded the same meaning." (*People v. Wells* (1996) 12 Cal.4th 979, 986 [50 Cal.Rptr.2d 699, 911 P.2d 1374].) Section 832.8 contains two phrases similar to "employment history": "[m]edical history" (§ 832.8, subd. (b)) and "educational . . . history" (§ 832.8, subd. (a)). Giving these two similar phrases the same construction the majority gives the phrase "employment history" means that only an officer's prehiring medical and educational information is included in the officer's confidential "personnel records" under section 832.7. I see no basis in logic, statutory language, or legislative history for making confidentiality depend on whether medical and educational information about an officer relates to a prehiring, as opposed to posthiring, period. And, because I believe the terms "medical history" and "educational . . . history" include an officer's posthiring medical and educational information, I see no basis for interpreting the term "employment history" in subdivision (a) differently. As the Commission argues, " 'history' cannot have one meaning in one subdivision of [the] statute, but an entirely opposite meaning in the very next subdivision."

The majority's construction is also problematic in its application. The majority states that section 832.8, subdivision (a), only includes information about the officer " 'as he or she came to the job.' " (Maj. opn., *ante*, at p. 295.) Does this mean that records reflecting posthiring changes regarding an officer's "marital status, family members, educational . . . history, [and] home addresses" (§ 832.8, subd. (a)) are not confidential "personnel records" under section 832.7? The majority also states that the term " 'employment history' " only encompasses information "relating to the officer's *current* position." (Maj. opn., *ante*, at p. 294.) An officer who has been terminated does not have a current position with his or her former department, so records of the former department (or information derived from those records) regarding such an officer's hiring and termination would seem to qualify as "personnel records" under the majority's construction. Yet, the majority seemingly holds that even as to terminated officers, the information requested here is not "[p]ersonal data" under section 832.8, subdivision (a). (Maj. opn., *ante*, at p. 299.)

Ultimately, there is little to support the majority's construction other than the majority's own view of public policy.[6] The majority asserts that the public has a "substantial" interest "in the qualifications and conduct of peace officers" (maj. opn., *ante*, at p. 299), and that the public's interest " 'in the qualifications and conduct of law enforcement officers' " is " 'far greater' " than its interest in the qualifications and conduct of "the average public servant." (*Id.* at p. 297.) It is in light of this policy concern that the majority declares itself "hesita[nt]" to follow the ordinary meaning of the statutory language. (*Id.* at p. 296.)

Even were I to agree with the majority's view of public policy—a matter on which I express no opinion—I do not believe that view would justify the majority's construction. The Legislature has clearly and expressly articulated a different view of public policy in the very statutes at issue here. As noted above, among the records the Legislature has expressly made confidential are those relating to an officer's "advancement, appraisal, or discipline" (§ 832.8, subd. (d)), and to "[c]omplaints, or investigations of complaints, concerning an event or transaction in which [the officer] participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties." (*Id.*, subd. (e).) This information goes more to the heart of an officer's qualifications and conduct than any other, and the Legislature's decision to make it confidential thus reflects a view of policy at odds with the policy view that drives the majority's construction.[7] As I noted at the outset, we have neither power nor prerogative to substitute our view of public policy for the Legislature's.

Indeed, the public itself, through an amendment to the state Constitution, has also expressed a policy view different from the majority's. As the majority explains (maj. opn., *ante*, at p. 288), when the voters added a constitutional provision declaring a "*right of access to information concerning the conduct of the people's business*" and making "*the writings of public officials and agencies . . . open to public scrutiny*" (Cal. Const., art. I, § 3, subd. (b)(1)), they also expressly preserved "*statutory procedures governing discovery or disclosure of information concerning* the official performance or professional qualifications of a peace officer." (*Id.*, subd. (b)(3), italics added.) Through this provision, the voters ratified and endorsed the policy view the Legislature implemented by enacting sections 832.7 and 832.8, subdivisions (d) and (e). Of course, we do not pass upon the wisdom, expediency, or policy "of enactments by the voters any more than we would enactments by the Legislature." (*Professional Engineers in California*

---

[6] Notably, the majority cites nothing in the legislative history that supports its construction.

[7] For this reason, the majority's assertion that there is only "some tension" between its view of public policy and the Legislature's (maj. opn., *ante*, at p. 298) is a significant understatement.

*Government v. Kempton* (2007) 40 Cal.4th 1016, 1043 [56 Cal.Rptr.3d 814, 155 P.3d 226].) Given that the Legislature, through sections 832.7 and 832.8, and the voters, through a constitutional amendment, have expressly protected the confidentiality of records relating to the qualifications and conduct of police officers, the majority errs in basing its construction on a view of policy contrary to that expressed by both the Legislature and the electorate. I therefore disagree with the majority's conclusion that subdivision (a) of section 832.8 does not encompass records reflecting an officer's name, employing agency, and dates of employment.[8]

## II. GOVERNMENT CODE SECTION 6254, SUBDIVISION (c).

As the majority explains (maj. opn., *ante*, at p. 299), in resisting disclosure, the Commission also relies on Government Code section 6254, subdivision (c), which provides that the CPRA does not require disclosure of "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (Gov. Code, § 6254, subd. (c).) The majority rejects this argument, finding that "the privacy and safety interests of peace officers in general do not outweigh the public's interest in the disclosure of the information sought . . . ." (Maj. opn., *ante*, at p. 303.) In light of my conclusion that the requested information is encompassed within Penal Code sections 832.7 and 832.8, subdivision (a), I need not decide whether Government Code section 6254, subdivision (c), also applies. I do, however, have several comments about the majority's analysis.

In my view, the majority's analysis of the public interest in disclosure is inconsistent with the view of that interest the Legislature and the voters have expressed. Like its analysis of Penal Code section 832.8, the majority's analysis of Government Code section 6254, subdivision (c), depends heavily on the majority's view that "[t]he public's interest in the qualifications and conduct of peace officers is substantial . . . ." (Maj. opn., *ante*, at p. 299.) According to the majority, the public has a "legitimate interest" in discovering "why" peace officers leave a department and whether a department is hiring officers who have been dismissed from other departments, because this information will facilitate identification of "specific instances of potentially inappropriate employment practices." (*Id.* at p. 300.) In my view, the Legislature has already spoken on this subject, by expressly providing in sections 832.7 and 832.8, subdivisions (d) and (e), that an officer's personnel file is not an appropriate source of information on these subjects. And, the voters have

---

[8] Because the majority declines to decide whether the Commission adequately established that the information in its possession came from files maintained under the officers' names by their employing agencies (maj. opn., *ante*, at p. 299, fn. 8), I also decline to address that issue. (See Cal. Rules of Court, rule 8.516(b)(3) ["court need not decide every issue the parties raise"].)

ratified the Legislature's policy decision by passing a constitutional provision that expressly preserves "statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer." (Cal. Const., art. I, § 3, subd. (b)(3).) The majority's analysis improperly ignores these expressions of policy by the Legislature and the voters.

I also question several other aspects of the majority's analysis. In light of its holding that sections 832.7 and 832.8 "do not protect an officer's name, employing department, and dates of employment," the majority concludes that these statutes "do not support the argument that peace officers have a recognized privacy interest in" that information. (Maj. opn., *ante*, at p. 301.) Because, as earlier explained, I disagree with the majority's construction of sections 832.7 and 832.8, I disagree with the majority's conclusion.

I also question the majority's view that disclosure of *all* officers' names is necessary to serve the public's interest in tracing officers' movements and identifying general trends and specific instances of potentially inappropriate employment practices. (Maj. opn., *ante*, at p. 300, fn. 10.) To serve this asserted interest, it is unnecessary to disclose the identity of all officers in the Commission's records, most of whom no doubt have rarely or never transferred from one department to another. Instead, this asserted interest can be fully satisfied by using a two-step process in which the requested information is first disclosed with nonidentifying tracking designations substituted for the officers' names, followed by disclosure of the names of the relatively few officers whose movements may merit further inquiry. This approach would be entirely consistent with the CPRA, which requires "deletion" of any exempt material that is "reasonably segregable" from nonexempt material. (Gov. Code, § 6253, subd. (a).)

I next question the majority's reliance on the fact that officers' names may be otherwise accessible to the public in various ways. (Maj. opn., *ante*, at p. 301.) In construing exemption 6 of the Freedom of Information Act (5 U.S.C. § 552(b)(6)), which is similar to Government Code section 6254, subdivision (c), in that it applies to personnel files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," the high court stated: "The privacy interest protected by Exemption 6 'encompass[es] the individual's control of information concerning his or her person.' [Citation.] An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." (*Department of Defense v. FLRA* (1994) 510 U.S. 487, 500 [127 L.Ed.2d 325, 114 S.Ct. 1006].) The majority's analysis gives no consideration to this aspect of an officer's privacy interest.

Finally, I am also not convinced of the majority's view that release of the requested information poses no threat to the safety of officers and their families. (Maj. opn., *ante*, at pp. 302–303.) Notably, in 1990, the Legislature amended subdivision (a) of section 832.8 by adding "home addresses" to the list of examples of confidential "[p]ersonal data." (Stats. 1990, ch. 264, § 1, p. 1535.) According to the amendment's legislative history, one of the Legislature's purposes in adding "home addresses" to the list was to protect officers and their families. (Assem. Com. on Public Safety, Analysis of Sen. Bill 1985 (1989–1990 Reg. Sess.) as amended May, 16, 1990, p. 2.) Given that publicly available databases on the Internet make it easy to link a name to an address, the release of an officer's name would not seem to pose much, if any, less of a safety risk than would disclosing an officer's home address. (See *Frank v. City of Akron* (6th Cir. 2002) 290 F.3d 813, 819 ["Most individuals' addresses . . . are readily available on the Internet"].) Contrary to the majority's suggestion, in light of the accessibility of information through the Internet, it would be entirely "feasible" for someone hostile toward the police to use the list of names to locate peace officers' addresses in order to "harass them" or their families. (Maj. opn., *ante*, at p. 302.) Moreover, in light of the Legislature's acknowledgment of the dangers faced by officers and their families, I do not agree with the majority (*id.* at p. 302) that we can simply dismiss this threat as being "purely speculative."[9] (See *King County v. Sheehan*, *supra*, 57 P.3d at p. 315 [it is "naïve . . . to believe that police officers who are identified on anti-police web sites . . . by name and home address . . . could not thereby be placed in danger or subjected to harassment"].)

Ultimately, the majority concedes that in light of "the privacy and safety interests of" some officers, the requested records "may contain some information that should be exempted from disclosure." (Maj. opn., *ante*, at p. 303.) The majority assigns to the Commission the responsibility for making the showing necessary to establish that information concerning "particular officers" should not be disclosed. (*Id.* at p. 303.) In my view, the Commission, which is not the officers' employing department but is merely an agency that collects information from numerous employing departments, is poorly suited to identify and assert the privacy and safety interests of the individual officers identified in its records.

---

[9] The statutes the majority cites (maj. opn., *ante*, at pp. 302–303, fn. 13) do little to support its view that the possibility of harassment from disclosure of an officer's identity is "speculative" and that such harassment may not even be "feasible." (*Id.* at p. 302.) Three of the cited statutes only limit address disclosures done with malicious intent (absent an officer's "written demand" for nondisclosure). (Gov. Code, §§ 6254.21 and 6254.24; Pen. Code, § 146e, subd. (a).) The remaining statutes place limitations on only two potential sources of address information: records of the Department of Motor Vehicles *if* confidentiality is expressly requested (Veh. Code, § 1808.4, subd. (a)), and voter registration cards (Elec. Code, § 18110).

### III. Conclusion.

"[A]side from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state. [Citations.]" (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) Thus, "[w]hen the Legislature has spoken, the court is not free to substitute its judgment as to the better policy." (*City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 121 [48 Cal.Rptr.2d 42, 906 P.2d 1196].) Our constitutional role is simply to "follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law," whatever we may think of its wisdom, expediency, or policy. (*California Teachers, supra,* 14 Cal.4th at p. 632.) Because I believe the majority's holding substitutes the majority's view of policy for that of the Legislature, as expressed by the plain meaning of the words in section 832.8, subdivision (a), I dissent.

Baxter, J., concurred.